## CUMBERLAND COAL CO. *v.* BOARD OF REVISION OF TAX ASSESSMENTS IN GREENE COUNTY, PENNSYLVANIA.*

No. 7.   Argued October 16, 19, 1931.—Decided November 23, 1931.

*Mr. Arthur B. Van Buskirk,* with whom *Messrs. William A. Seifert, Samuel McClay, W. J. Kyle,* and *Carl E. Glock* were on the brief, for petitioners.

* Together with Nos. 8, 9, and 10, *Cumberland Coal Co. v. Board of Revision of Tax Assessments;* No. 11, *Phillips v. Board of Revision of Tax Assessments;* No. 12, *Piedmont Coal Co. v. Board of Revision of Tax Assessments;* and No. 13, *Greene County Coal Co. v. Board of Revision of Tax Assessments.*

*Mr. Challen W. Waychoff*, with whom *Messrs. A. A. Purman* and *Ambrose Bradley* were on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

These seven cases were heard together in the state court and decided in a single opinion, as they were deemed to present but one question. They relate to assessments for taxation of the coal lands of the petitioners, for the year 1928, in several townships of Greene County, Pennsylvania. Taking as typical the assessment of coal lands in the township of Cumberland, it appears that petitioners, on appeal to the Court of Common Pleas of Greene County, assailed the plan of assessment adopted by the Commissioners of the County sitting as a Board of Appeal for the Revision and Equalization of Assessments. Petitioners alleged that the valuation placed upon their coal was unjust and discriminatory, as the Commissioners had "assessed all coal in the same township (except what is termed 'active coal') at the same valuation; regardless of the remoteness or accessibility of the said coal to market, cost of operation, or means of transportation and regardless of the difference in value and without due regard to the valuation and assessment of other coal and other classes of real estate in the County of Greene." The Court of Common Pleas, on findings of fact and conclusions of law, dismissed the appeals, and the decrees were affirmed by the Supreme Court of the State. 302 Pa. 179; 152 Atl. 755. The specific contention that the plan of assessment violated the equal protection clause of the Fourteenth Amendment was presented by petition for reargument and was considered and was explicitly overruled by the Supreme Court. As the state court entertained and decided the federal question, this Court has jurisdiction. Jud. Code, § 237 (b); U. S. C., Tit. 28,

§ 344.  *Leigh* v. *Green,* 193 U. S. 79, 85; *Sullivan* v. *Texas,* 207 U. S. 416, 422; *Illinois Central R. Co.* v. *Kentucky,* 218 U. S. 551, 556; *Fleming* v. *Fleming,* 264 U. S. 29, 31.

There is no question that the assessments under review were made pursuant to a deliberately adopted system. The case is not one of mere errors in judgment in following a proper method (*Sunday Lake Iron Co.* v. *Wakefield,* 247 U. S. 350, 352, 353; *Southern Railway Co.* v. *Watts,* 260 U. S. 519, 526), but one where the challenged discrimination resulted from a plan of assessment which was none the less systematic and intentional because of belief in its validity. *Raymond* v. *Chicago Union Traction Co.,* 207 U. S. 20, 35, 37; *Sioux City Bridge Co.* v. *Dakota County,* 260 U. S. 441, 445; *Chicago Great Western Ry. Co.* v. *Kendall,* 266 U. S. 94, 98, 99.

From the facts as found by the Court of Common Pleas, it appears that the petitioners' property in question is virgin coal (as distinguished from "active coal," that is, coal which "is opened and mined"[1]) and is part of the Pittsburgh or River vein.  That is a continuous vein of bituminous coal underlying the whole of Greene County and is "practically of the same character, quality and thickness."  Greene County is bounded on the east by the Monongahela River, and the Pittsburgh or River vein extends westerly for several miles through a number of townships.  The coal immediately along the river front, by reason of proximity to rail and river transportation, is more valuable than the "back coal," and the value of the coal decreases with the distance from the river.  Within a distance of about three miles westerly from the river,

---

[1] The court found that "where the coal is opened and mined," the Commissioners "have assessed one hundred acres as active coal, and if the amount of coal mined exceeds seventy-five acres for the year 1927 they have increased the acreage of the active coal to two hundred fifty acres."

mining operations are being conducted. In making the triennial assessments for the taxation of property *ad valorem*, the Commissioners adopted as a uniform basis for all property fifty per cent. of the amount taken as actual value. The Commissioners then assigned different values for the coal in the different townships of the county, but assessed the coal within the same township at the same value an acre notwithstanding differences in actual or market value due to distances from transportation facilities and to other factors.

Cumberland Township adjoins the Monongahela River and extends westerly about nine miles. All the coal in the Pittsburgh or River vein within the limits of this township, except what was described as "active coal," [2] was assessed by the Commissioners (on the fifty per cent. basis) at $260 an acre, despite the fact that the coal along the river, and for a considerable area (much more than 250 acres [3]) around the operating plants, was worth $1,000 an acre.

The petitioner, Cumberland Coal Company, owns 64,574 acres of the Pittsburgh or River vein of coal within Greene County, of which 9,237 acres lie in Cumberland Township and consist (with the exception of two small, detached tracts not here involved) of a block of coal extending from a point distant 2¼ miles westerly from the Monongahela River to the western boundary of the township. With respect to the difference in actual value of that petitioner's coal, distant from the river, as compared with coal of the same sort belonging to other owners and more favorably located, the Court of Common Pleas expressly found as follows:

"The Pittsburgh or River vein of coal of appellant" (petitioner here) "lying a distance of three miles west of the Monongahela River and extending back a distance

---

[2] "Active coal" was assessed at $500 an acre.

[3] See Note 1, *supra*.

of three miles, or six miles from the river, does not possess a value of more than one-half of the value of the same vein of coal fronting on the Monongahela River, belonging to others than appellant, and extending back a distance of three miles westwardly."

In attempted justification of the discrimination, the Court of Common Pleas adverted to the fact that other owners of coal in this vein were also assessed for "active coal" and for buildings, equipment and real estate constituting "operating properties." But such assessments appear to have been made for items in a different class of properties and the complaint of the petitioner is not with respect to such items, but as to the discrimination in the assessment of coal of the same character and description within the township (that is, exclusive of active coal and operating properties) which was assessed at the same figure of $260 an acre throughout the township notwithstanding the great differences in actual value according to location.

It is not necessary to deal with disparities in the assessments of coal in the same vein in other townships of Greene County, as these assessments present essentially the same question. Nor is it necessary to enlarge upon the facts, as the Supreme Court of the State made no question as to these and dealt specifically with the question of law which they raise. That question was defined and answered by the Supreme Court in its opinion, as follows:

"Appellants' counsel state their position thus: Township assessors and county commissioners sitting as a board of revision may not assess all bituminous coal in the Pittsburgh or river vein within the territorial limits of a township at the same value, disregarding differences in actual or market values by reason of great differences of distance from the river or rail transportation and other factors entering into values where it is undisputed that

the actual or market value of the coal varies throughout the township and that the coal fronting on the river and railroads possesses a value twice that of the coal lying back from the river and extending to a distance of nine or ten miles. Our answer must be that they may so assess it, and the courts may not alter individual assessments, provided they do not fix the value at a figure in each instance greater than the fair market value of each owner's property, or, as in the cases before us, higher than the percentage of value, here fifty per cent. uniformly fixed throughout the county.

" None of the appellants has shown that its or his property in the market is not worth double the assessment fixed by the county commissioners and court below. Since they fixed fifty per cent. of market value as they conceived it to be, appellants without showing a less value for their properties, have no standing to complain. . . .

" . . . The fifty per cent. ratio throughout the county having been uniformly fixed and appellants not having shown that their assessments as made are in excess of fifty per cent. of the fair market values of their property, have no standing to complain, it matters not what other assessments of other properties not before us may be." 302 Pa. at pp. 182–184; 152 Atl. 755.

And, on the petition for reargument, presenting the federal question, the Supreme Court, modifying its first order denying the petition, said, upon consideration, that the Court was " of opinion that the plan of assessment in these cases does not violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States."

We are unable to agree with this view. It is established that the intentional, systematic undervaluation by state officials of taxable property of the same class belonging to other owners contravenes the constitutional right of one taxed upon the full value of his property.

*Sunday Lake Iron Co.* v. *Wakefield, supra; Sioux City Bridge Co.* v. *Dakota County, supra; Raymond* v. *Chicago Union Traction Co., supra; Chicago Great Western Ry. Co.* v. *Kendall, supra.* In *Sioux City Bridge Co.* v. *Dakota County, supra* (at p. 446), this Court, referring to the dilemma presented by a case where one or a few of a class of taxpayers are assessed at one hundred per cent. of the value of their property pursuant to statutory requirement and the rest of the class are intentionally assessed at a lower percentage, stated the rule to be as follows: " This Court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law."

In applying this principle, the fact that a uniform percentage of assigned values is used, cannot be regarded as important if, in assigning the values to which the percentage is applied, a system is deliberately adopted which ignores differences in actual values so that property in the same class as that of the complaining taxpayer is valued at the same figure (according to the unit of valuation, as, for example, an acre) as the property of other owners which has an actual value admittedly higher. Applying the same ratio to the same assigned values, when the actual values differ, creates the same disparity in effect as applying a different ratio to actual values when the latter are the same. If the Commissioners, in the instant case, had taken the basis of one hundred per cent. instead of fifty per cent. of the assigned values, but had adopted the same method of assessment by which all the coal in a township

(aside from active coal) was assessed at the same value an acre, despite well known and important differences in value, the result would have been an undervaluation of similar coal belonging to other owners, which would have brought the case of the petitioners within the principle of the decisions cited. In such case, if the petitioners' property had been valued at one hundred per cent. of its actual value, the like property of the other owners, having a higher actual value, would in effect have been valued at less than one hundred per cent. The discrimination is essentially the same, and is equally repugnant to constitutional right, when both assessments are made on the basis of fifty per cent. of assigned values and differences in actual values are deliberately and systematically disregarded. The undervalued property is in effect valued at less than fifty per cent. of its actual value; for example, coal of the same description worth twice as much as that of the Cumberland Coal Company was really valued at twenty-five per cent. of its actual value.

The petitioners are entitled to a readjustment of the assessments of their coal so as to put these assessments upon a basis of equality, with due regard to differences in actual value, with other assessments of the coal of the same class within the tax district.

The decrees are reversed and the causes are remanded for further proceedings not inconsistent with this opinion.

*Reversed.*