ASHLAND COUNTY BANK and another, Respondents, vs. VILLAGE OF BUTTERNUT, Appellant.   [Three cases.]

*February 9—May 10, 1932.*

For the appellant the cause was submitted on the briefs of *C. E. Lovett* of Park Falls, attorney, and *Bundy, Beach & Holland* of Eau Claire of counsel.

For the respondents there were briefs by *Miller, Mack & Fairchild* of Milwaukee, attorneys, and *John Fordyce* of New Ulm, Minnesota, of counsel, and oral argument by *Leon F. Foley* of Milwaukee.

The following opinion was filed March 8, 1932:

NELSON, J. At the outset it should be stated that we have carefully examined the record for the purpose of determining whether there is evidence to support the findings of the court numbered 9 and 10, recited in the statement of facts, with the result that we conclude that such findings are well supported by the evidence.

We therefore start out with the findings that in each of said years, in the village of Butternut, and throughout the state of Wisconsin, there existed, in the hands of individual citizens, as well as corporations and associations other than

banks and trust companies, a substantial amount of moneyed capital that came into competition with national and state banks; that such moneyed capital in the hands of individual citizens was intentionally not taxed by the taxing officers on the *ad valorem* basis; that it was the policy of the Tax Commission and the taxing authorities throughout the state of Wisconsin, including the defendant village, not to tax such moneyed capital so coming into competition with that of national and state banks on the *ad valorem* basis; and that the assessment of shares of stock of banks, including the plaintiff bank, was at a higher rate than other moneyed capital in the hands of individual citizens, corporations, and associations other than banks, coming into competition with the business of banks.

This court might well take judicial notice of the fact that ever since the year 1911 when the income tax law was enacted, up to the year 1927, when secs. 70.31, 70.37, 70.38, 70.39, and 70.404, all of which related to the taxation of bank shares on the *ad valorem* basis, were repealed, and sec. 70.40 amended, shares of stock in banks were assessed on the *ad valorem* basis and all other moneyed capital in the hands of individual citizens, corporations, and associations, other than banks and trust companies, was assessed on a basis of income. We might also well take judicial notice of the fact that assessments of bank shares on the *ad valorem* basis results in a higher tax than one computed on the basis of income under the income tax rates which existed during those years, or at least in an inequality of taxation.

"When it appears on the face of the statute that bank shares are taxed on valuation at a flat rate and that the owner of competing moneyed capital relatively material in amount is taxed on income only, the court is powerless to say that equality of taxation has been secured and injustice prevented. We are forced to compare two methods which are wholly unlike. How can equality be established or presumed as a necessary result of the taxing statutes? In a

very considerable number of cases the valuation tax must inevitably be the heavier burden. It is fixed and certain. The income tax is variable and dependent on income and amount of income. It is conceivable that when returns on such capital are low, the bank stock would be taxed and the competing capital would be exempt. In no event would equality exist unless the income on competing capital were large beyond the dreams of avarice and the usual returns on investments." *People ex rel. Hanover Nat. Bank v. Goldfogle,* 234 N. Y. 345, 354, 355, 137 N. E. 611.

It must be remembered that the plaintiff is a state bank, not a national bank. If the plaintiff were a national bank there would be little difficulty in determining its rights under the rules laid down in *First Nat. Bank v. Hartford,* 273 U. S. 548, 47 Sup. Ct. 462. As we view this case, the crucial question for decision is whether the assessment of the plaintiff's shares of stock on the *ad valorem* basis resulted in a violation of plaintiff's constitutional rights.

Plaintiff earnestly contends that ch. 391, Laws of 1923, violated sec. 5219 of the Revised Statutes of the United States because it failed to provide for taxation of moneyed capital in the hands of individuals not engaged in a business in competition with national banks. Sec. 5219 was originally enacted in 1864, amended in 1868, and again amended in 1923. (Act of March 4, 1923, ch. 267, 42 U. S. Stats. at Large, 1499.) So much of sec. 5219 as is material to this controversy is as follows:

"Sec. 5219. The legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may tax said shares, or include dividends derived therefrom in the taxable income of an owner or holder thereof, or tax the income of such associations, provided the following conditions are complied with:

"1. (a) The imposition by said state of any one of the above three forms of taxation shall be in lieu of the others.

"(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks: *Provided,* that bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section. . . .

"3. Nothing herein shall be construed to exempt the real property of associations from taxation in any state or in any subdivision thereof, to the same extent, according to its value, as other real property is taxed."

This section has been universally held to be the authority which permits a state to tax national banks. *People v. Weaver,* 100 U. S. 539, 543; *First Nat. Bank v. Hartford, supra; First Nat. Bank v. Anderson,* 269 U. S. 341, 347, 46 Sup. Ct. 135.

Without such statutory authority the several states would have no right to tax national banks since they are federal agencies and not subject to taxation without the consent of the federal government.

Sec. 5219 was enacted for a twofold purpose: (1) to permit the states to tax national banks; and (2) to prohibit the states from discriminating against them in the assessment of taxes.

In *People v. Weaver,* 100 U. S. 539, in speaking of sec. 5219, it was said (p. 543) :

"As Congress was conferring a power on the states which they would not otherwise have had, to tax these shares, it undertook to impose a restriction on the exercise of that power, manifestly designed to prevent taxation which should discriminate against this class of property as compared with other moneyed capital. In permitting the states to tax these shares, it was foreseen—the cases we have cited from our former decisions showed too clearly—that the state author-

ities might be disposed to tax the capital invested in these banks oppressively.

"This might have been prevented by fixing a precise limit in amount. But Congress, with due regard to the dignity of the states, and with a desire to interfere only so far as was necessary to protect the banks from anything beyond their equal share of the public burdens, said, you may tax the real estate of the banks as other real estate is taxed, and you may tax the shares of the bank as the personal property of the owner to the same extent you tax other moneyed capital invested in your state. It was conceived that by this qualification of the power of taxation equality would be secured and injustice prevented."

To the same effect are *Mercantile Bank v. New York,* 121 U. S. 138, 7 Sup. Ct. 826, and *First Nat. Bank v. Hartford, supra.*

Prior to the year 1923 the state of Wisconsin taxed both state and national banks on the *ad valorem* basis both as to real estate and shares of stock. On March 4, 1923, sec. 5219 was amended by Congress as hereinbefore stated. Prior to the year 1923 the legislature of this state had apparently deemed it unnecessary to enact a law complying with the provisions of said sec. 5219, but in 1923, no doubt after having had the amendment to sec. 5219 called to its attention, the legislature enacted ch. 391, amending sec. 70.37 and creating two new sections, 70.404 and 70.405, Stats. Said new sections were as follows:

"Section 2. Two new sections are added to the statutes to read: 70.404. For the purposes of sections 70.31, 70.37, 70.38, 70.39, 70.40 and 70.405, the term 'bank' or 'banking association' shall include all corporations, associations, partnerships, and individuals engaged in the banking or investment business and employing moneyed capital in competition with the business of national banks; provided, that bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not

be deemed moneyed capital within the meaning of this section, and any tax paid under the provisions of said sections 70.31, 70.37, 70.38, 70.39 and 70.40 shall be in lieu of any income tax upon income from such business.

"70.405. If it shall be finally adjudicated or determined that the provisions of sections 70.31, 70.37, 70.38, 70.39, 70.40 and 70.404 are invalid in application to national banks, each bank or banking association and all corporations, associations, partnerships and individuals included under the term 'bank' or 'banking association' by section 70.404 shall be assessed and taxed respectively from and after the taking effect of this section, in lieu of the tax under said sections, in the same manner as other corporations, associations, partnerships and individuals under the provisions of the income tax law in force during the period after the taking effect of this section. This section shall apply to the 1923 and subsequent assessments."

Sec. 70.404, just quoted, was no doubt enacted for the purpose of complying with sec. 5219, as that section was apparently construed by the legislature and its advisors.

The trial court, however, found that the Wisconsin Statutes of 1921 relating to taxation of the shares of banks, together with the amendment made thereto in 1923 (ch. 391), were invalid in their application to national and state banks for the reason that such laws were not in compliance with sec. 5219. That the scheme of taxation of bank shares provided by secs. 70.31, 70.37, 70.38, 70.39, 70.40 and 70.404, Wis. Stats., was not in compliance with sec. 5219 cannot be doubted in view of the definition of the supreme court of the United States given to "other moneyed capital." *First Nat. Bank v. Hartford, supra; First Nat. Bank v. Anderson,* 269 U. S. 341, 46 Sup. Ct. 135; *Mercantile Bank v. New York,* 121 U. S. 138, 7 Sup. Ct. 826. Ch. 391, Laws of 1923, hereinbefore quoted, provided that "the term 'bank' or 'banking association' shall include all corporations, associations, partnerships, and individuals engaged in the banking or investment business and employing moneyed capital

in competition with the business of national banks," but did not include "other moneyed capital" in the hands of individuals and not employed in the "banking or investment business." That the legislature, in enacting ch. 391, intended fully to comply with the provisions of sec. 5219, as amended, is strenuously urged by defendant. It is contended that such legislative intention should be found, if possible, and that the act might be so construed by changing "and" to "or" where it occurs before the expression "employing moneyed capital in competition with the business of national banks." Such construction, however, does not seem justified in view of the plain unambiguous language employed. Had the legislature so intended it would have been a simple matter so to have provided. The conclusion seems irresistible that the legislature erroneously construed sec. 5219 as excluding from "other moneyed capital" such capital in the hands of individuals as was not employed in banks, banking associations, corporations, associations, partnerships, and individuals engaged in the banking or investment business and employing moneyed capital in competition with the business of national banking. That such was the construction thereafter placed upon both sec. 5219 and ch. 391 by the Tax Commission there can be no doubt, for as early as May 31, 1924, in speaking of sec. 5219 and ch. 391 it said:

"The purpose of both enactments was to restore the method of assessing bank stock which had prevailed for a period of fifty years prior to the decision in the *Richmond Case* [*Merchants Nat. Bank v. Richmond,* 256 U. S. 635, 41 Sup. Ct. 619], and exclude private loans and investments from moneyed capital with which banks must be compared. . . . In evident attempt to comply to the federal statute a clause was added by sec. 70.404 requiring 'all associations, partnerships and individuals engaged in the banking or investment business and employing moneyed capital in competition with the business of banks' to be assessed in the same manner. But inasmuch as the constitution and

laws of Wisconsin provide a separate method for organizing banks, surround the business with numerous safeguards and restrictions, and prohibit any person or company not so organized from engaging in the banking business, it is not believed that this clause has any significance in this state.

"Other individuals and organizations engaged in the securities, investment, and loaning business under the laws of this state are sharply differentiated from organizations engaged in banking. None of them are organized as banks or allowed to do a banking business. In so far as they compete with banks at all, the competition is incidental and limited and it is believed that none of them can encroach on the main functions of banks or use moneyed capital in competition with them,' within the meaning of the federal statute.

"After an extensive investigation of the character and methods of business followed by these institutions, and receiving legal advice in reference thereto, the Tax Commission is of opinion and respectfully advises all assessing officers that none of such individuals, companies, or associations are engaged in the banking business and none of them are using moneyed capital in competition with national banks as defined in the federal act, and that none of such institutions are required to be assessed in the same manner as banks.

"We therefore advise that the assessment of banks be made under section 70.37 to section 70.404 inclusive, substantially in the following manner."

Such was, furthermore, the construction given to "other moneyed capital" by this court in *First Nat. Bank v. Hartford,* 187 Wis. 290, 203 N. W. 721, which was held to be erroneous on appeal to the supreme court of the United States. *First Nat. Bank v. Hartford,* 273 U. S. 548, 47 Sup. Ct. 462. From all of these considerations it seems clear that the legislature placed a wrong construction upon sec. 5219 and deliberately enacted ch. 391, intentionally excluding therefrom other moneyed capital in the hands of individuals not employed in the banking or investment business, and intentionally provided that as to such capital it

should not be taxed as shares of stock in banks on the *ad valorem* basis, but only on the basis of income.

We conclude that the laws of the state of Wisconsin relating to the taxation of bank stock and existing during the years in question, including ch. 391, were not in compliance with sec. 5219 and, therefore, as to national banks, were invalid.

Since the laws mentioned were void as to national banks, the conclusion inevitably follows that they were also void as to state banks, for the reason that, since national banks could not be taxed thereunder, neither could state banks, because state banks would thereby be subjected to a higher rate of taxation than national banks, in violation of the Fourteenth amendment to the constitution of the United States.

The purpose of the Fourteenth amendment, as respects equal protection of the laws in taxation matters, is stated to be as follows, in *Sioux City Bridge Co. v. Dakota County,* 260 U. S. 441, 445, 43 Sup. Ct. 190:

"In the case of *Sunday Lake Iron Co. v. Wakefield,* 247 U. S. 350, 352, 353, 38 Sup. Ct. 495, this court said: 'The purpose of the equal protection clause of the Fourteenth amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. And it must be regarded as settled that intentional systematic under-valuation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property. *Raymond v. Chicago Union Traction Co.* 207 U. S. 20, 35, 37, 28 Sup. Ct. 7.' Analogous cases are *Greene v. Louisville & I. R. Co.* 244 U. S. 499, 516, 517, 518, 37 Sup. Ct. 673; *Cummings v. National Bank,* 101 U. S. 153, 160; *Taylor v. Louisville & N. R. Co.* 88 Fed. 350, 364, 365, 372, 374; *Louisville & N. R. Co. v. Bosworth,* 209 Fed. 380, 452; *Washington W. P. Co. v. Kootenai County,* 270 Fed. 369, 374."

That the constitutional rights guaranteed to the plaintiff by the Fourteenth amendment were violated seems now, in

view of the recent decision of the supreme court of the
United States in *Central State Bank v. Bennett,* 284 U. S.
239, 52 Sup. Ct. 133, decided December 14, 1931, no longer
an open question. In that case, which arose in the state of
Iowa, a discrimination in taxation arose under the laws of
that state due to the taxation of bank shares on a different
basis than that of money credits and corporation shares of
stock and notes, including those secured by mortgage, where-
by the taxes laid upon the shares of competing domestic
corporations were at a rate only one-fifth to one-seventh of
that applied to the shares of stock in banks. The petitioner,
which was a state bank, claimed that it had been subjected
by such laws to intentional systematic discrimination in
violation of the equal protection clause of the Fourteenth
amendment. The court said:

"The federal right of the Central State Bank rests wholly
upon that clause [Fourteenth amendment]. It is assumed
that there was such inequality of treatment as the constitu-
tion prohibits." Citing the following cases: *Raymond v.
Chicago Union Traction Co.* 207 U. S. 20, 37, 52 Lawy. Ed.
78, 82, 28 Sup. Ct. 7, 12 Ann. Cas. 757; *Sioux City Bridge
Co. v. Dakota County,* 260 U. S. 441, 446, 67 Lawy. Ed.
340, 343, 28 A. L. R. 979, 43 Sup. Ct. 190; *Cumberland
Coal Co. v. Board of Revision,* 284 U. S. 23, 52 Sup. Ct. 48.
Compare *Sunday Lake Iron Co. v. Wakefield Tp.* 247 U. S.
350, 353, 62 Lawy. Ed. 1154, 1156, 38 Sup. Ct. 495.

The following language found in *Cumberland Coal Co. v.
Board of Revision,* 284 U. S. 23, 52 Sup. Ct. 48 (decided
Nov. 23, 1931), is significant:

"There is no question that the assessments under review
were made pursuant to a deliberately adopted system. The
case is not one of mere errors in judgment in following a
proper method (*Sunday Lake Iron Co. v. Wakefield Tp.* 247
U. S. 350, 352, 353, 62 Lawy. Ed. 1154–1156, 38 Sup. Ct.
495; *Southern R. Co. v. Watts,* 260 U. S. 519, 526, 67
Lawy. Ed. 375, 387, 43 Sup. Ct. 192), but one where the
challenged discrimination resulted from a plan of assessment
which was none the less systematic and intentional because

of belief in its validity. *Raymond v. Chicago Union Traction Co.* 207 U. S. 20, 35, 37, 52 Lawy. Ed. 78, 87, 88, 28 Sup. Ct. 7, 12 Ann. Cas. 757; *Sioux City Bridge Co. v. Dakota County,* 260 U. S. 441, 445, 67 Lawy. Ed. 340, 342, 28 A. L. R. 979, 43 Sup. Ct. 190; *Chicago G. W. R. Co. v. Kendall,* 266 U. S. 94, 98, 99, 69 Lawy. Ed. 183, 188, 189, 45 Sup. Ct. 55."

In *Commercial State Bank v. Wilson,* 53 S. Dak. 82, 220 N. W. 152, it was held that since "the shares of national banks cannot be taxed at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens, coming into direct competition with such banks, it follows that the shares of state banks in South Dakota cannot be taxed at a greater rate than is assessed upon other moneyed capital coming into competition with the business of such banks, and this conclusion cannot be avoided by the fact that the legislature in ch. 103, Laws of 1923, has provided for the assessment and taxation of bank stock according to its value as tangible personal property."

To the same effect is *State Bank of Omaha v. Endres,* 109 Neb. 753, 192 N. W. 322, which involved the constitutionality of a law taxing shares of national and state banks at the same rate as other tangible property and in which it was said (p. 758):

"From what has been said, it would seem to follow that sec. 5887, Comp. Stat. 1922, relating to the duty of the assessor in taxing shares of stock in banks, banking associations, and trust companies, in so far only as it declares 'such capital stock shall thereupon be listed and assessed by him at the same rate as tangible property assessed in the taxing district where the principal place of business of such association, bank, or company is located,' is invalid as to national banks, because it conflicts with the act of Congress forbidding states to tax shares of a national bank at a greater rate than is assessed upon other moneyed capital, and, with national banks excluded from its operation, it is also invalid as to state banks, because the latter would then

be taxed at a higher rate than national banks, and therefore the taxation would conflict with that part of the state constitution requiring taxes to be uniform as to class. Rev. Stat. U. S. sec. 5219; Nebraska Const. art. 8, sec. 1." See, also, *Central Nat. Bank v. Sutherland,* 113 Neb. 126, 202 N. W. 428.

In view of the state-wide controversy that existed between the banks and the taxing authorities in this state prior to the decision of the United States supreme court in *First Nat. Bank v. Hartford, supra,* we may well take judicial notice of the fact that the taxation of bank shares on the *ad valorem* basis resulted in a higher rate of tax than that imposed upon other moneyed capital taxed on the basis of income. This being true, it must follow that the plaintiff was so discriminated against as to constitute a clear violation of its rights guaranteed to it by the Fourteenth amendment to the constitution of the United States.

Since the imposition of the taxes for 1923, 1925, and 1926 was illegal and void, it follows that the plaintiff has the right to recover them.

We reserve the question as to whether sec. 70.405, Stats. 1923, was valid as an alternative enactment, which became effective upon sec. 70.404 being declared unconstitutional, because no income tax assessment pursuant to said section is now before us.

*By the Court.*—Judgments affirmed.

A motion for a rehearing was denied, with $25 costs, on May 10, 1932.