## SANTA ROSA, Inc., et al. v. LYFORD INDEPENDENT SCHOOL DIST.

### No. 9493.

Court of Civil Appeals of Texas. San Antonio.

Jan. 30, 1935.

Jesse G. Foster, of Raymondville, for appellants.

A. B. Crane and R. F. Robinson, both of Raymondville, for appellee.

BICKETT, Chief Justice.

Santa Rosa, Inc., a corporation, has appealed from a judgment rendered against it in favor of Lyford Independent School District for the aggregate amount of $17,059.52, representing the taxes, plus interest, penalty, and costs claimed by the district to be due for the years 1930, 1931, and 1932 on a tract of over 13,000 acres of land.

The controlling issues are: (1) Whether the method of assessment violated the constitutional requirement for uniformity and resulted in discrimination against appellant, and (2) whether the addition to the district of other lands without an assumption election for the imposition thereon of a proportionate part of the tax for a prior bond issue resulted in discrimination against appellant.

For each of the years in question, the assessor and board of equalization of the district followed the same plan of assessment.

The rural lands were laid out into zones parallel to the highway that divided the district. Proceeding eastward, the land in the first strip of a quarter of a mile in width was assessed at $90 per acre north of Lyford and $80 per acre south of Lyford; and the land in each other strip was assessed at a figure determined for the particular strip by deducting a fixed amount from the figure applied to the strip adjoining on the west. Thus, by successive decreases, the land in the strip just before reaching the Santa Rosa tract was assessed at $40 per acre. This tract, having a width of from 4 to 5 miles and running from the north to the south lines of the district, was assessed at $37.50 per acre. With respect to the valuations thus far referred to, there was applied a differential of $2.50 per acre as between cleared and uncleared lands, that is, from those figures as a basis for cleared land $2.50 was deducted if the land was uncleared. To the east of the Santa Rosa tract was what is known as the Turner tract of about 12,000 acres, which was assessed at $25 for cleared land and $20 for uncleared land. Two-thirds of the Turner tract was in cultivation and well improved. The Santa Rosa tract was uncleared and had practically no improvements on it. The cost of clearing and preparing such land for cultivation during the years in question was a minimum of $15 per acre. Many tracts were in cultivation as farms or as citrus fruit orchards, and had valuable improvements. No improvements upon land were assessed at any amount. Stocks of merchandise were assessed at 50 per cent. of inventory figures. All horses and mules were assessed at $25 per head; and all cows at $20 per head. All automobiles were assessed at $100 or $200 each, according to whether they were "old" or "new," except two expensive ones that were assessed at $300 and $400, respectively. In making the assessments, the assessor and members of the board of equalization did not consider the value of the particular lands or other property, but made the assessments in accordance with the method explained. In 1932, there was a general reduction of 10 per cent. applied to all assessments, but the method was not altered. The average value per acre of the Santa Rosa tract did not exceed $35 in 1930, $35 in 1931, and $25 in 1932. This land was, therefore, assessed for each of those years at its full value or in excess thereof. Other lands, considering the state of cultivation and the citrus fruit orchards and the improvements, were assessed in each of the three years at substantially less than full value.

Additions to the territory of the district were made to the extent of approximately 12,000 acres in 1930 and approximately 10,000 acres in 1931. The latter addition was made as the result of a boundary dispute between this district and another one, which went to the Supreme Court [Willamar Independent School District v. Lyford Independent School District (Tex. Com. App.) 34 S.W.(2d) 854] and which was finally adjusted by a formal agreement. Although the record is not clear, it appears that the former addition, also, was made as a matter of boundary regulation. Neither of the additions was the result of a consolidation of districts. Prior to 1930, this district had issued bonds to the amount of $110,000. And the bond tax levied was 35 cents per hundred dollars on all property valuations. The bond tax, however, was not collected from the owner of the 12,000 acres in 1931 or 1932, or from the owner of the 10,000 acres in 1932. There was never any election, other than the original bond issue election, concerning the issuance of the bonds or the levy of taxes for the payment thereof.

Article 8, § 1, of the Constitution of Texas reads: "Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

Article 7206, Revised Civil Statutes of Texas (1925), in part, reads: "They shall equalize improved lands in three classes, first-class to embrace the better quality of land and improvements, the second-class to embrace the second quality of lands and improvements, and the third-class to embrace lands of but small value or inferior improvements. The unimproved lands shall embrace first, second and third class, and all other property made as nearly uniform as possible."

■ The constitutional and statutory requirements for equality and uniformity of assessment of property for purposes of taxation are violated by a system of valuing lands according to zones without regard to the actual value of particular tracts, of ignoring all improvements on land, of valuing stocks of merchandise at one-half of actual value and other personalty at set arbitrary figures irrespective of actual value, especially so, when a particular tract of uncultivated land is assessed by the same plan at its full value or in excess thereof, and other lands and personalty are assessed at substantially less than their full value. The attempt to classify lands by strips or zones and to ap-

ply the set values determined for each strip or zone to all lands lying in it proceeds from the outset to disregard the prime object of the Constitution and the statute, which is to determine the value of each piece of property. No such arbitrary rule for the standardization of values fits the facts. The zone plan of assessment, as employed in this instance, is so fundamentally erroneous as to make it impossible for anything but discriminatory results to be produced. Moreover, the refusal to assess the value of all improvements upon real estate is an added discrimination against the owner of uncleared and otherwise unimproved lands. And, likewise the assessment of personalty at one-half its value or at something less than its value, when some land is assessed at its full value, is a further discrimination. The disregard of the requirements of the law shown in this case render the assessments void, and will necessitate a reassessment in conformity with settled principles. Ogburn v. Ward County Irrigation District No. 1 (Tex. Com. App.) 280 S. W. 169, 171; Hunt v. Throckmorton Independent School District (Tex. Civ. App.) 59 S.W.(2d) 470, and cases therein cited; Cumberland Coal Co. v. Board of Revision, 284 U. S. 23, 52 S. Ct. 48, 76 L. Ed. 146. In the Ogburn Case it was said: "In appraising the value of this and all other real property, the board of equalization have paid no attention to the value thereof. Without reference to the value of improvements all lands in the district were by the board given an arbitrary value according to the respective zones in which they are situated and the use to which they were put. All personal property was valued at one-half its real value. This action on the part of the board was in violation of the constitutional provision that property should be taxed in proportion to and at its fair value, and that taxation shall be equal and uniform."

■■ The mere addition of area to an independent school district so as to make it conform to its true boundaries does not constitute such a consolidation of districts as to require an election to determine whether the burden of an existing bond issue shall be assumed by and imposed upon the added area. Articles 2807 and 2815, Revised Civil Statutes of Texas (1925), have no application to this situation, so to require an assumption election. It is simply considered that the added area was and is within the true boundaries of this district. And, therefore, the property within the added area, since the ad-

dition, is subject to all of the taxes levied by this district. The fact that the officers of the district may have failed to collect all of the taxes lawfully due upon property within the added area does not affect the validity of the bond tax as against the property of others, including appellant, within the district, if the assessments are properly made as required by the Constitution and the statute.

■ The judgment of the trial court was erroneous, in that it segregated the assessment made in the aggregate against the entire Santa Rosa tract within the district and fixed particular amounts against parcels. This matter, however, will not arise upon a future trial, if any, after the reassessment of the property in accordance with the requirements of this opinion.

The judgment of the district court is reversed, and the cause remanded.