**SOUTHLAND MALL, INC., a Maryland Corporation, Plaintiff,**

**v.**

**Riley C. GARNER, the County Trustee of Shelby County, Tennessee, et al., Defendants.**

**Civ. A. No. C–68–68.**

United States District Court,
W. D. Tennessee, W. D.

Jan. 27, 1971.

Newton P. Allen, Walter P. Armstrong, Jr., Fred M. Ridolphi, Armstrong, Allen,

Braden, Goodman, McBride & Prewitt, Memphis, Tenn., for plaintiff.

Minor Tait, Asst. County Atty. (County of Shelby), Memphis, Tenn., for defendants.

## OPINION AND ORDER

BAILEY BROWN, Chief Judge.

In this action plaintiff, Southland Mall, Inc., a Maryland corporation with its principal place of business in Tennessee, sues the County Trustee (tax collector), the County Quarterly Court (a legislative body) and the County Commission of Shelby County, Tennessee to recover a refund of realty taxes assessed on plaintiff's shopping center and paid under protest for the year 1967 in the amount of $57,460.

Plaintiff owns and operates a shopping center in Memphis and Shelby County.[1] Plaintiff is a wholly owned subsidiary of a Maryland parent corporation, which owns the stock of several such subsidiaries, each of which owns and operates a shopping center. The tract of land, of which plaintiff's property is a part, was originally acquired by plaintiff as a 50 acre tract. By agreement the plaintiff and Sears, Roebuck & Co. (hereinafter Sears) and Federated Stores (hereinafter Federated) divided the tract into three parcels prior to its development. Southland Mall's remaining land consists of 21.4 acres on which is situated plaintiff's main building and a separate building leased to a bank. The main building contains many retail stores inside a completely enclosed mall which permits shopping without exposure to the weather. Sears has 14.28 acres of the original tract and Federated owns 12.58 acres.[2] Both Sears and Federated have erected department stores on their respective parcels (the Federated store is called "Goldsmith's") which adjoin plaintiff's mall at either end so that shoppers may walk to and from the Sears and Federated Stores by way of the enclosed mall. It is undisputed that at the time the taxes in question were assessed the Southland Mall Shopping Center was the most modern shopping center in Shelby County and the only shopping center with a completely enclosed mall.

Plaintiff's property was appraised at a value of $5,200,000 and the assessed valuation set at $2,600,000 for 1967.[3] The county tax rate in 1967 was $2.21 per hundred which resulted in a tax of $57,460 which, as stated above, was paid under protest by the plaintiff. Southland Mall then petitioned the County Board of Equalization for a review of the appraised value. The appraisal was reviewed and upheld. Then plaintiff appealed to the State Board of Equalization which likewise upheld the appraisal. Finally plaintiff instituted a suit in the Davidson County Circuit Court at Nashville against the State Board of Equalization for a reduction of the assessed value to actual value, and the suit is still pending.

Prior to trial of the instant case this Court determined, on motion, that the plaintiff had stated a claim for relief under the equal protection clause of the Fourteenth Amendment with respect to which the Court had jurisdiction under 28 U.S.C. § 1331, and it was also so determined that the sole issue to be litigated was whether the defendants intentionally discriminated against the plaintiff in assessing plaintiff's property taxes. Southland Mall, Inc. v. Garner, 293

---

1. Since the institution of this suit, the area where plaintiff's land is situated has been annexed by the city. At the time the suit was filed the land was in the county but not in the city.

2. A small strip of the original tract was dedicated to the county for the widening of a public road bordering the shopping center.

3. The Shelby County assessor, as was done here, uniformly assessed property at one-half its appraised value. The issue here, as will be seen, has to do with the amount of the appraisal. The involved assessment was the first one levied on this newly-built shopping center.

F.Supp. 1370 (W.D.Tenn.1968). The case was tried without intervention of a jury and post-trial briefs have been supplied.

It is plaintiff's theory that, as a result of defendants' intentional discrimination, its property was appraised at a value higher than actual value or at a higher percentage of actual value than other similar property. Relying primarily upon Cumberland Coal Co. v. Board of Revision, 284 U.S. 23, 52 S.Ct. 48, 76 L. Ed. 146, 147 (1931), plaintiff contends defendants intentionally discriminated by failing to consider, or in any event to give weight to, factors which affected the value of plaintiff's property. Plaintiff asserts that defendants intentionally disregarded the zoning of plaintiff's property, restrictive contractual covenants binding the plaintiff and the road frontage of plaintiff's shopping center.

The defendants deny that there has been any discrimination. It is their contention that plaintiff's property, along with all other property in the county, was properly appraised by a firm of professional land appraisers of national reputation for competency and efficiency. Defendants further contend that the formula used in the making of the appraisals embodied the most up to date techniques and was accepted nationally by property appraisers. If there was any difference in the treatment given plaintiff and the treatment given other property owners, it is defendants' position that this difference in treatment was the product of errors in judgment rather than intentional discrimination.

 The equal protection clause of the Fourteenth Amendment protects every citizen against intentional discrimination, whether occasioned by the express terms of a statute or by a deliberately improper execution of a statute. Sunday Lake Iron Co. v. Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1917). A taxpayer may make out a case of intentional discrimination if he establishes that state taxing authorities deliberately or systematically disregarded factors which affect the value of the taxable property.[4] Cumberland Coal Co. v. Board of Revision, supra; Charleston Fed. Sav. & Loan Assoc. v. Alderson, 324 U.S. 182, 65 S.Ct. 624, 89 L.Ed. 857 (1944). This principle was followed in the *Cumberland Coal* case where county taxing officials assessed all the coal producing property in Cumberland Township at $260 per acre regardless of its actual value, even though the taxing authority well knew that some such property was of greater value because it was much more accessible to market than other such property. The Court found this to be discrimination repugnant to the Constitution. *Id.* 284 U.S. at 30, 52 S.Ct. at 51, 76 L.Ed. at 151.

 At bottom, it is plaintiff's contention that it can make a case by showing that there are well-recognized factors for appraising value which were in fact not given weight in this appraisal. There is *dicta* in *Cumberland Coal* which would seem to support this legal contention. However, a careful reading of that opinion will demonstrate that a case of conscious and systematic discrimination was admittedly before the Court in that case and that the existence of such discrimination is the basis for the Court's holding, for if this were not true, then the *dicta* in this case would be contrary to the holdings in Sunday Lake Iron Co., *supra*, Southern Ry. Co. v. Watts, 260 U.S. 519, 43 S.Ct. 192, 67 L.Ed. 375 (1922), Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1922), and Charleston Fed. Savings & Loan Assoc., *supra*. We would agree, of course, that a Court may, from evidence of a failure to consider, or even from evidence of a failure to give proper weight to, relevant appraisal factors, infer intentional discrimination, but such state of mind must be found to have existed before a denial of equal protection can be found.

4. We do not understand plaintiff to contend that there was a "systematic" discrimination since this was the first assessment.

We do not believe plaintiff has made out a case under the equal protection clause. As stated, mere errors of judgment by officials will not support a claim of discrimination and the burden of proof rests upon the complaining party to establish intentional discrimination. Sunday Lake Iron Co. v. Wakefield, *supra* 247 U.S. at 353, 38 S.Ct. at 495, 62 L.Ed. at 1156. If the action taken by the defendants in the present case was in error, it was due to error in judgment rather than intentional discrimination. We find that a preponderance of the evidence indicates that defendants did not consciously discriminate by disregarding the zoning of plaintiff's shopping center, the restrictive contractual covenants binding the plaintiff or the road frontage of plaintiff's shopping center. The appraiser testified that he considered all of these factors but there is evidence that one or more persons on the boards of equalization did not.

Southland Mall placed greatest emphasis on the restrictive contractual covenants and the zoning. The plaintiff argued that the zoning[5] of its land decreased the value of the land because it allowed only 25% of the surface area to be used for buildings while the other 75% had to be reserved for parking. Defendants claimed that this restriction did not make plaintiff's land less valuable, because a prerequisite to a successful shopping center is plenty of customer parking and that plaintiff's parking plus that available nearby by virtue of the zoning of Sears and Federated was all to the advantage of plaintiff. This is clearly a judgmental factor.

The contractual provisions or covenants which plaintiff referred to as decreasing the value of its land included those limiting the amount of floor space plaintiff could rent to any one tenant, those excluding certain stores as potential tenants, those obligating plaintiff to maintain the parking and common areas of Sears and Federated and those requiring any purchaser of plaintiff's property to assume all plaintiff's obligations under the contract. Defendants contend that these "restrictive agreements" were to some extent advantageous to the plaintiff, as the presence of Sears and Federated guaranteed the success of the Mall and the restrictive agreements were necessary to get them into the Mall. Whether this is a factor to be considered and the weight to be given is clearly a question of judgment.

With respect to road frontage, it is true, as plaintiff contends, that it does not have the amount of frontage that some other local shopping centers do have. But, as pointed out by defendants, this Mall plus Sears and Federated's Goldsmith's do have optimum frontage and since they operate for practical purposes as an entity, plaintiff is not disadvantaged by the limited frontage of the property to which it still holds title. In any event, again, the propriety of the consideration of this factor in this case and the weight to be given it are clearly questions of judgment.[6]

It is therefore ordered and adjudged that plaintiff will recover nothing and that this action be and the same is hereby dismissed.

---

5. Plaintiff's property, as well as that of Sears and Federated, was zoned SC or Shopping Center as opposed to C or Commercial as some other shopping centers are zoned. The latter allows the landowner to build on more than 25% of the surface area.

6. It should be noted that defendants made a strong case that the appraisal value was correct, whether tested by the "cost or summation" approach or the "income" approach. However, we need not determine whether the appraisal was correct since the only issue before us is whether there was intentional discrimination, which we have answered in the negative.