**Moyer Appeal**

*Jules Pearlstine*, for appellants.
*Roger Reynolds*, for appellee.

LOWE, J. December 6, 1971.—These are appeals from the reassessment of farm and open-space properties in the North Penn Area School District (hereinafter referred to as the "district") of this county. They bring into focus legal issues of constitutional dimension and economic policies of substantial proportion.

In 1965, pursuant to an equalization program, the Board of Assessment and Revision of Taxes of Montgomery County (hereinafter referred to as the "board") reassessed all realty in the district at one-third market value, excepting only farm and open-space lands. The exceptions were assessed at one-third an arbitrary $250 to $500 valuation per acre. Similarly reduced assessments were entered on most other farm and open-space lands in the county.

In August 1970, *all* realty in the district was reassessed at one-third market value, thereby eliminating the favored assessment valuations previously imposed upon farm and open-space properties. Numerous appeals were timely taken to the board, which fixed hearings for December 29 and 30, 1970. The scheduled hearings never convened because appellants' counsel contended such would violate the mandate of section 8 of the Act of June 26, 1931, P. L.

1379, as amended, 72 PS §5349(d), wherein it is provided, "All appeals shall be heard and acted upon not later than the first day of October."

The appeals present two issues for determination by this court: (1) Is the selectively applied contemporary assessment policy as to farm and open-space lands violative of the Federal and State constitutions? (2) does the failure of the board to conduct hearings upon the appeals and to act thereon previous to October 1st invalidate the 1970 reassessments?

Appellants present cogent and persuasive arguments in support of their contention the reassessments violate article VIII, sec. 1, of the Constitution of the Commonwealth of Pennsylvania. That section provides, "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

With what "class of subjects" is the court here concerned? Real estate. The Supreme Court of Pennsylvania has made it abundantly clear that it views all realty as one class under the above-quoted uniformity clause (Madway v. Board for the Assessment and Revision of Taxes, 427 Pa. 138 (1967))[1]: "No provision in our constitution has been so much litigated yet so little understood; and certainly not the least thorny question has been whether real estate as a whole constitutes a class which cannot be further broken down for tax purposes. To put to rest some

---

[1] This decision concerned article IX, sec. 1, of the Constitution of this Commonwealth which formerly provided, in part, "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax . . ." It is deemed dispositive of the issue under consideration, the articles and sections having been juxtaposed by comparatively recent constitutional amendment.

of this confusion, we hold today that real estate as a subject for taxation may not validly be divided into different classes:" id. 143.

Accordingly, the board is constitutionally enjoined from assessing farm and open-space lands upon different criteria from that established for the assessment of all other realty.

Apart from the mandate contained in the Constitution of this Commonwealth, there are allied and relevant Federal constitutional considerations. "Absent the uniformity clause in our State Constitution, the 14th amendment of the Federal Constitution would protect taxpayers of the same class from discriminatory treatment in violation of their right to equal protection of the laws": McKnight Shopping Center, Inc. v. Board of Property Assessment, 417 Pa. 234, 240 (1965).

The Supreme Court of the United States has observed, "The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class": Township of Hillsborough et al. v. Cromwell, 326 U.S. 620, 623 (1945). See also Cumberland Coal Co. v. Board of Revision of Tax Assessments in Greene County, Pa., 284 U.S. 23 (1931).

It is clear that enforcement of these constitutional imperatives commands prompt reassessment of appellants' real estate and all other underassessed farm and open-space properties in the county. Unfortunately, and though this be true, the first issue raised in these appeals, as set forth above, may not be so simply resolved. Other considerations of equal gravity impel evaluation.

The "territorial limits" of the taxing districts must be established. They are dependent upon which tax

is under consideration. Normally, the board fixes the assessed valuations upon which the local municipalities, the school district, the county and the institution district levy the real estate tax in millage. It is to be remembered that all assessments must be uniform upon all realty "within the territorial limits of the authority levying the tax." Heretofore, the board has assessed farm and open-space properties upon the favorable basis advanced above in all but seven of the county's 22 school districts. Six of the seven are situated in densely populated suburban areas where land valuations are substantial. The seventh is the comparatively rural district with which we are here concerned and in which some 447 farm and open-space properties have previously received favorable assessment considerations. These facts amply demonstrate the unconstitutionality of the board's current assessing policies and of the instant reassessments of the farm and open-space lands in the district when considering the county and institution district taxes. Obviously, the municipal and school district taxes would not violate the uniformity requirement.[2]

In support of the reassessments, the board urges upon the court the practicalities of reevaluating all farm and open-space lands in the county. It is submitted that the instant reassessments are akin to an equalization program, and that the law does not and should not require the impossible, i.e., a reassessment of all properties in question within one year. It is certainly true the courts have long sustained programs which extend over a period of two or more years, de-

---

[2]The North Penn Area School District embraces, in their entirety, the following Montgomery County municipalities: the Townships of Towamencin, Upper Gwynedd, Hatfield and Montgomery, and the Boroughs of Hatfield, North Wales and Lansdale.

signed to equalize real property assessments. Briefly
stated, it may be said the essential requisites to the
validity of such a program are that it be completed
as promptly as possible, executed in good faith and
without undue prejudice, and that the end result pass
constitutional muster: Rogan v. County Commis-
sions of Calvert County, 71 A. 2d 47 (Md., 1950);
Hamilton v. Adkins, 35 So. 2d 183 (Ala., 1948); City
of Roanoke v. Gibson, 170 S.E. 723 (Va., 1933); Wild
Goose Country Club v. Butte County, 212 P. 711
(Calif. Dist. Ct. of Appl., 1922).

It is this court's conviction that the principle of law
and cases cited in the next preceding paragraph are
inapposite the appeals now before the bar. The cases
cited, and others, concern for the most part compara-
tively minimal property value escalations, or deesca-
lations, from a previous assessment to the present,
and all had been assessed, past and present, upon the
same basis. Not one involved a dramatic alteration
of taxing policy such as that now before the court.
Furthermore, this court is absolutely convinced that
the comparatively few farm and open-space proper-
ties in all the county's school districts still receiving
unconstitutional assessment considerations could be
reassessed within one year's time. Equalization pro-
grams conducted in this county in the recent past
under the aegis of the board and with the assistance
of professionally qualified mass appraisers have nec-
essarily involved reevaluations of an infinitely greater
number of properties in one year than are here con-
cerned, and all have been consummated without
undue difficulty.

In Sunday Lake Iron Company v. Township of
Wakefield, 247 U.S. 350 (1917), the Supreme Court
of the United States sustained the reevaluation of
appellant's land at double its previous assessment

because it found the action of the Michigan State Board of Tax Assessors "not incompatible with an honest effort in new and difficult circumstances to adopt valuations not relatively unjust or unequal," but Mr. Justice McReynolds was careful to observe and admonish that "intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents," violates the fourteenth amendment: id., 352-53. The appeals presently before the court clearly invoke application of the "improper execution" principle because there was no determined, conscientious, *bona fide* effort to revalue all underassessed farm and open-space lands within the taxing district (the county) within one year as could most surely and certainly have been accomplished.

At this juncture, it is appropriate to observe this court neither believes nor avers, even by inference or innuendo, that there has been anything sinister or malicious in the conduct of the board. Nothing in this opinion is to be considered an indictment of the board or of its motives. Rather, it is the potential danger or peril of favoritism and inequity inherent in the arbitrary and capricious selection of a single school district for reassessment that establishes grounds for invocation of the legal principles advanced above and moves the court to sustain appellants' appeals upon this basis.

The court now turns to the failure of the board to conduct hearings on the appeals and to act upon the same previous to October 1st. Interestingly, both the board and appellants cite Parker v. Krick, 433 Pa. 514 (1969), as authority for their contentions. Specifically, the board points to Justice Roberts' language, in referring to time limits as fixed by the statute, at page 516.

"We need not consider a provision of this type to be mandatory 'so long as the rights of property owners to protest their assessment and to appeal therefrom are respected.'"

Appellants counter with the observation that in *Parker* Justice Roberts was neither concerned with, nor controlled by, the subsequent amendatory enactment of the General Assembly of December 14, 1967, P. L. 834, 72 PS §5350j.1, effective January 1, 1969, wherein it is provided:

"All dates specified in this act for the performance of any acts or duties shall be construed to be mandatory and not discretionary with the officials who are designated by this act to perform such acts or duties."

The law as explicitly detailed in the above-quoted statute admits to no strained or attenuated judicial interpretation and makes it crystal clear that hearings on assessment appeals absolutely must be convened and acted upon before October 1st. The board failed in this mandatory and obligatory responsibility, and it follows for this reason that all reassessments here at issue must be declared null and void. Neither the North Penn Area School District, the local municipalities involved, nor any other taxing authority may apply the 1970 reassessment valuations.