LOUISVILLE AND NASHVILLE RAIL-
ROAD COMPANY, Plaintiff-
Appellee,

v.

PUBLIC SERVICE COMMISSION OF
TENNESSEE and the State Board of
Equalization of Tennessee, Defendants-
Appellants.

No. 17180.

United States Court of Appeals
Sixth Circuit.

Feb. 14, 1968.

McCree, Circuit Judge, dissented.

Milton P. Rice, Asst. Atty. Gen., Nash-
ville, Tenn., for appellants; George F.
McCanless, Atty. Gen., State of Tennes-
see, Eugene Ward, Gen. Counsel, Public
Service Commission, State of Tennessee,
Nashville, Tenn., on brief.

David M. Keeble, Nashville, Tenn.,
for appellee; W. L. Grubbs, Philip M.
Lanier, Louisville, Ky., Hooker, Keeble,
Dodson & Harris, Nashville, Tenn., on
brief.

Before PECK, and McCREE, Circuit
Judges, and McALLISTER, Senior Cir-
cuit Judge.

McALLISTER, Senior Circuit Judge.

This action was brought by the Louis-
ville and Nashville Railroad Company
against the Public Service Commission
of Tennessee, and the Tennessee State

Board of Equalization, and others, to enjoin the certification and enforcement of tax assessments against the Railroad Company.

After an extended hearing, Judge William E. Miller held that the record of the case established a systematic and long-standing policy of the Public Service Commission to assess the Railroad's property within the state at a much higher percentage of actual cash value than the custom of local assessors in assessing other property at a smaller fraction of actual cash value, and resulted in violation of the Tennessee Constitution and statute, and denial of equal protection of the plaintiff's rights under the Fourteenth Amendment of the Federal Constitution. The court held that although, theoretically, the Railroad Company could pursue certain procedural avenues in the state courts, nevertheless, the state law would bar relief to the Railroad Company unless it could prove that it had been assessed at more than actual cash value, which it could not do.

Finding that the Railroad Company had been substantially over-assessed in relation to other taxpayers in the state, and that relief would be denied it unless the defendants were enjoined from certifying or enforcing the assessment, the court so enjoined the defendants, without prejudice to the State Board of Equalization of Tennessee, to rehear and reconsider the assessment, so that it might be made to conform with the requirement of equal protection of the law under the Fourteenth Amendment; and held that, pending such redetermination, the case would be retained on the active docket, with either party having the right to apply to the court, at any time, for other or additional orders.

This controversy involving the constitutional rights of the appellee and the rights of the State of Tennessee was decided by Judge Miller in a compendious opinion setting out all the pertinent facts and discussing the applicable law as well as annexing to his opinion copious appendices setting forth the provisions of the Tennessee Constitution and the Tennessee Statutes relevant to the issues. One of the detailed appendices sets forth the actual tax rates for the various counties of the state, the ratio of the assessed to actual value in the counties, and the effective tax rate in each of the counties.

The foregoing is an outline of the case, the issues, and decision of the court in a controversy which is important, complex, and of great interest, and which was ably presented by arguments and briefs on appeal by counsel on both sides.

The gist, then, of appellee's contention is that by the assessment and taxation of appellee's property through the method adopted by the Public Service Commission, appellee suffered unlawful discrimination in violation of its rights under the Fourteenth Amendment, commanding equality of treatment.

Appellee's property, according to Article 2 of the Constitution of Tennessee, and all other property in Tennessee, are required to be taxed at their actual cash value, and no one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of the same value. The Tennessee Constitution also provides that the legislature shall tax all property according to its value, upon the principles established in regard to state taxation. The Tennessee legislature has provided that all property of every kind shall be assessed at its actual value and, with regard to railroad property, that the Public Service Commission shall assess all such property at its actual cash value.

It is easy enough to see how, if one kind of property is assessed at a different rate of cash value than another kind of property and that they are both taxed on the basis of such assessments, the two kinds of property are not taxed according to their actual tax value. If one kind of property is taxed at 10% of its actual value, and another kind of property is taxed at 90% of its actual value, any intelligent person could perceive the inequality of the basis of such taxation, and the injustice of it.

But appellant cites to us, and relies upon, the case of Nashville, C. & St. L. Ry. v. Browning, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254, to support its contention that the assessment and taxation of appellee railroad in this case is not in violation of the latter's rights to the equal protection of the laws. In the *Browning* case, the Supreme Court, speaking through Mr. Justice Frankfurter, said:

"The Railway first asserts that it is a victim of such invidious discrimination in the administration of Tennessee's tax statutes as is proscribed by the guaranty of 'the equal protection of the laws.' The claim is founded upon the following circumstances. As we have already indicated, there are two separate modes for the assessment of property in Tennessee, each with its distinctive procedure. The property of public service corporations is assessed by the Commission; all other property by local officials. This broad classification, separating two very different types of property, has been reflected, according to petitioner's contention, by a corresponding difference in the bases of assessment. For more than forty years, so it was urged before the courts of Tennessee and later here, the county assessors have systematically valued property at far less than its true worth, while utility and railroad properties have been assessed by the Commission at full value. This systematic differentiation, petitioner claims, has been continuous and statewide in its operation; has been 'repeatedly brought to the attention of the General Assembly of the State of Tennessee'; has been left uncorrected by that body; and until the present case, so far as we are informed, has been unchallenged. In support of its claim the Railway adduced official and unofficial reports as well as a volume of affidavits from local assessing officials in the counties through which its lines run—all to the effect that locally assessed property was undervalued. The issue of forbidden discrimination was thus squarely raised below. But the Tennessee Supreme Court did not deem petitioner's evidence sufficient to overcome the presumption that in the exercise of its reviewing function, the Board had equalized assessments in accordance with the command of state law. We should be reluctant on such a question to reject the state court's determination as without foundation, and there is not enough in the record to warrant its repudiation."

In his opinion in the instant case in the district court, Judge William Miller distinguished the *Browning* case by clearly pointing out that the Tennessee Supreme Court had never passed upon the issues adjudicated in the district court, and that there was no question of rejecting the state court's determination in the matter. He also referred to the Constitution of the State of Tennessee and the relevant tax statutes which prohibited the classification of property for tax purposes or the valuation of any property at less than its actual cash value. In the *Browning* case, after deciding the single issue involved, Mr. Justice Frankfurter went on to state that even if the ground taken *by the state supreme court in that case* was "a strained evasion of the differentiation between utility property on the one hand and all the rest on the other, we should still find no denial of the equal protection of the laws." This statement was, as Judge Miller pointed out, clearly dicta, and moreover was not pertinent to the instant case, which was not an attempt to overrule the state supreme court. Further, Justice Frankfurter stated that, "Since, so far as the Federal Constitution is concerned, a state can put railroad property into one pigeonhole and other property into another, *the only question relevant for us is whether the state has done so.* If the discrimination of which the Railway complains had been formally written into the statutes of Tennessee, challenge to its constitutionality would be frivolous. *If the state supreme court had construed the requirement of uniformity* in the Tennessee Constitution so as to permit recognition of

these diversities, *no appeal could successfully be made to the Fourteenth Amendment.*" (Emphasis supplied.) In the instant case there has been no discrimination formally written into the statutes of Tennessee, *nor had the Supreme Court of Tennessee construed the requirement of uniformity in the Tennessee Constitution so as to permit recognition of these diversities.* Hence, these statements in the *Browning* case have no relevance or controlling effect in the instant case. Furthermore, in the *Browning* case, Justice Frankfurter emphasized that:

"It would be a narrow conception of jurisprudence to confine the notion of 'laws' to what is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice cannot supplant constitutional guarantees, but it can establish what is state law. The Equal Protection Clause did not write an empty formalism into the Constitution. Deeply embedded traditional ways of carrying out state policy, such as those of which petitioner complains, are often tougher and truer law than the dead words of the written text."

▆▆▆ Regardless of what may be meant by the "dead words" of the written text of either constitution or statute, it is to be emphasized, as Mr. Justice Frank-

furter has himself emphasized it, that "[s]ettled state practice cannot supplant constitutional guarantees"; and, in the instant case no state practice can supplant the constitutional guarantee in Tennessee that all property of every kind shall be assessed at its actual value. We are further referred to Mr. Justice Frankfurter's statement in the *Browning* case that "[I]f the state supreme court chooses to cover up under a formal veneer of uniformity the established system of differentiation between two classes of property, an exposure of the fiction is not enough to establish its unconstitutionality. Fictions have played an important and sometimes fruitful part in the development of law."[1] However, we are not here concerned with any such fiction. For the Supreme Court of Tennessee has not chosen to cover up under a formal veneer of uniformity an established system of differentiation between two classes of property; and there is, accordingly, no fiction, to be either concealed or exposed, that could have any bearing upon constitutionality, or that warrants our consideration.

▆▆▆ In retaining the case on the active docket of the district court, without prejudice to the right of the State Board of Equalization to rehear and reconsider

[1]. A fiction of law is always founded in equity (In fictione juris semper subsistit aequitas). Blackstone's Commentaries, edited by William Carey Jones, Book III, p. 1553.

Bentham poured ridicule on legal fictions wherever he met them. (See Maine's Ancient Law, London, 1894, p. 27.)

Pound, in his great work on jurisprudence says that while fictions have played an important part in legal history, "we must not forget that they are a clumsy device appropriate only to periods of growth in a partially developed political organization of society in which legislation on any large scale is not possible. They are not suited to later times and developed systems. In a period of growth, when ideas are few and crude, they enable a body of law to be molded gradually, without legislative action, to meet immediate wants as they arise and

to conform to the requirements of cases as they arise.

\* \* \* \* \*

"After a certain stage of legal development, on the other hand, fictions retard growth and clog development. In a rational age, an age of substance rather than form, when legal doctrines are logically worked out and a body of learned jurists is at hand to apply and develop them, fictions may confuse and conceal the substance of legal precepts. In a sense they were devised to conceal the substance when the substance was not regarded as of legal consequence. They may operate still to conceal the substance after later ideas have made the substance almost the only thing of legal consequence." Jurisprudence, by Roscoe Pound, Vol. III, pp. 465, 466. (West Publishing Company, St. Paul, Minn., 1949)

the assessment in this case, so that it may be made to conform with the requirements of equal protection of the law under the Fourteenth Amendment, Judge Miller gave full opportunity to the State of Tennessee to secure a just adjudication of its rights.

■ In accordance with the foregoing, the judgment of the district court is affirmed for the reasons set forth in the opinion of Judge Miller, reported in 249 F.Supp. 894.

McCREE, Circuit Judge (dissenting.)

I respectfully dissent because I believe that Nashville, Chattanooga and St. Louis Railway v. Browning, et al., 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254 (1939), is controlling and that the District Court has failed to distinguish it. I understand that case to hold that

"* * * The states may classify property for taxation * * * and in making all these differentiations may treat railroads and other utilities with that separateness which their distinctive characteristics and functions in society make appropriate." 310 U.S. at 368, 60 S.Ct. at 972.

That Tennessee has accomplished this by long established practice is even clearer now than it was when *Browning* was decided, and as Mr. Justice Frankfurter wrote then for the unanimous court,

"And if the state supreme court chooses to cover up under a formal veneer of uniformity the established system of differentiation between two classes of property, an exposure of the fiction is not enough to establish its unconstitutionality." 310 U.S. at 369, 60 S.Ct. at 972.

Even if, as appellee contends, the assessment by appellant of appellee's property at a different level of value from the assessment of locally-assessed properties violates the law of Tennessee, Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943), establishes that "state action, even though illegal under state law, can be no more or less constitutional under the Fourteenth Amend-

ment than if it were sanctioned by the state legislature." 321 U.S. at 11, 64 S.Ct. at 402.

I would reverse.