**SOUTHLAND MALL, INC., Plaintiff-Appellant,**

v.

**Riley C. GARNER et al., Defendants-Appellees.**

**No. 71–1440.**

United States Court of Appeals, Sixth Circuit.

Feb. 17, 1972.

See also 293 F.Supp. 1370.

Newton P. Allen, Memphis, Tenn., for appellant; Walter P. Armstrong, Jr., Fred M. Ridolphi, Memphis, Tenn., on brief, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., of counsel.

J. Minor Tait, Jr., Asst. County Atty., Memphis, Tenn., on brief for appellees.

Before CELEBREZZE, Circuit Judge, O'SULLIVAN, Senior Circuit Judge, and ROTH,[*] District Judge.

CELEBREZZE, Circuit Judge.

Appellant, Southland Mall, Inc., commenced this action in the District Court seeking refund of all or a portion of the property taxes paid by it to Shelby County, Tennessee for the year 1967. After a trial to the Court, the District Judge denied relief and dismissed the complaint, 324 F.Supp. 674. We affirm that decision.

Appellant owns and operates a shopping center in Shelby County, Tennessee. Southland Mall, Inc., originally acquired a 50 acre tract; two parcels—one of 14.28 acres and one of 12.58 acres—were sold to Sears and Federated department stores respectively, however, as part of Southland's plan for developing the overall shopping complex. A small strip of the original tract was also dedicated to the County for road widening operations, leaving Southland Mall, Inc. with title to some 21.4 acres.

On this remaining land Southland constructed a shopping center consisting of approximately fifty individual retail stores; each store in the center opened into a completely enclosed, temperature controlled mall, affording shoppers easy passage from one retail store to another and from the individual stores to the Sears and Federated buildings joined to the mall at either end. The center was recognized by all to be the most modern shopping complex in Shelby County at the time of its completion in 1966.

The County Assessor's office appraised the Southland Mall, Inc. property at $5,200,000.00 and, following the standard Shelby County practice, assessed the property at 50% of this appraisal figure. The resulting tax of $57,400.00 was paid under protest.

Southland Mall appealed the appraisal and the assessment first to the County and then the State Board of Equalization; no change in the valuation was granted by either body. Finally, Appellant sought a writ of certiorari in the Circuit Court of Davidson County. The writ has been granted, affording Appellant a limited review of the decision taken by the State Board of Equalization in denying any change in the assessment. This suit has not been prosecuted to a conclusion and is apparently still pending in the State court.[1]

The Appellant then brought suit in the District Court; its original complaint invoked federal jurisdiction on both diversity and federal question grounds. The District Court determined that diversity of citizenship did not exist.[2] Appellant has not contested that decision. Thus the only basis for relief urged by Appellant before us is its claim that the County Assessor and other officials discriminated against it as compared to other taxpayers in making the appraisal of the Southland Mall property in violation of the equal protection guar-

[*] The Honorable Stephen J. Roth, United States District Judge, Eastern District of Michigan, sitting by designation.

1. In light of the pending state action we have considered the propriety of federal abstention in this present matter. A review of the questions presented in each action and of the remedies available to Appellant in this type of state proceeding convinces us that there is no possibility that any decision in the state court could eliminate the need for facing the constitutional question presented here. See Hillsborough v. Cromwell, 326 U.S. 620, 623, 66 S.Ct. 445, 90 L.Ed. 358 (1946); Louisville & Nashville Railroad Co. v. Public Service Comm. of Tennessee, 249 F.Supp. 894, 903–904 (M.D.Tenn. 1966) aff'd 389 F.2d 247 (6th Cir. 1968). Accordingly, we believe abstention would be inappropriate in this case.

2. There is some question as to whether or not this suit would be proper were it based solely on diversity jurisdiction since the remedy sought by Appellant here might not be available to a citizen of Tennessee suing on the state claim. See discussion in comparable situation in Louisville & Nashville R. Co. v. Public Service Comm. of Tennessee, 249 F.Supp. 894, 896 (D.C.M.D., Tenn.1966): affirmed, 389 F. 2d 247 (6th Cir. 1968). The circumstances of this case do not require us to reach this question, of course.

antee of the Fourteenth Amendment to the Constitution.

■ In order to establish an equal protection violation it is not necessary for a taxpayer to prove that he was overassessed. He may instead show that his property was assessed at its true value while other property was intentionally undervalued. Sioux City Bridge Company v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923). Or he may show that his property was assessed at the same level as other properties because the taxing authorities intentionally chose to ignore clear differences in value which should have lessened his assessment. Cumberland Coal Company v. Board of Revision of Tax Assessments in Greene County, Pa., 284 U.S. 23, 52 S.Ct. 48, 76 L.Ed. 146 (1931).

■ The element which he must always prove, however, is that he has been a victim of "intentional and arbitrary discrimination whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918); Sioux City Bridge Company v. Dakota County, supra; Cumberland Coal Co. v. Board of Revision, supra; Charleston Federal Savings & Loan Assn. v. Alderson, 324 U.S. 182, 65 S.Ct. 624, 89 L.Ed. 857 (1945); Louisville & Nashville RR. Co. v. Public Service Comm. of Tenn., 389 F.2d 247 (6th Cir. 1968).

■ Relief cannot be predicated upon mere errors of judgment committed by tax officials, however, Sunday Lake Iron Co. v. Wakefield, supra, 247 U.S. at 353, 38 S.Ct. 495; Sioux City Bridge Company v. Dakota County, supra; Charleston Federal Savings & Loan Assn. v. Alderson, supra; Southern Railway Co. v. Watts, 260 U.S. 519, 527, 43 S.Ct. 192, 67 L.Ed. 375 (1923). And the burden of establishing intentional discrimination rests upon the taxpayer challenging the official action. Charleston Assn. v. Alderson, 324 U.S. 182, 191, 65 S.Ct. 624, 89 L.Ed. 857 and cases cited therein.

The federal courts have rigorously enforced the rule that discriminatory intention must be shown lest routine complaints about the accuracy of an assessment, more properly heard in a state court familiar with local practice, clog the federal docket, disturbing federal-state relations and rendering the federal courts "board[s] of tax review." Nashville, Chattanooga & St. Louis Railway v. Browning, 310 U.S. 362, 367, 60 S.Ct. 968, 84 L.Ed. 1254 (1940). In explaining the intention which must be shown, the Supreme Court has stated: "There must be something that amounts to an intention, or the equivalent of fraudulent purpose, to disregard the fundamental principle of uniformity." Rowley v. Chicago & Northwest Railway, 293 U.S. 102, 111, 55 S.Ct. 55, 59, 79 L.Ed. 222 (1934).

While taxpayers have normally prevailed on equal protection claims only when they were able to demonstrate a systematic pattern of discrimination, see for example, Coulter v. Louisville & Nashville Railroad, 196 U.S. 599, 610, 25 S.Ct. 342, 49 L.Ed. 615 (1905); Sunday Lake Iron Co. v. Township of Wakefield; Sioux City Bridge Company v. Dakota County, supra; Concordia Fire Insurance Co. v. Illinois, 292 U.S. 535, 54 S.Ct. 830, 78 L.Ed. 1411 (1934), such a systematic pattern does not appear to be an essential element of the claim. See Snowden v. Hughes, 321 U.S. 1, 9–10, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Thus clear proof that a tax was discriminatorily aimed at a single taxpayer has been held to support an equal protection claim. McFarland v. American Sugar Company, 241 U.S. 79, 36 S.Ct. 498, 60 L.Ed. 899 (1916).

It is obvious, however that proof of intentional discrimination is likely to be difficult where the taxpayer cannot show a systematic pattern of discrimination or direct evidence of improper intention. The court is then asked to infer improper motive from isolated actions of an assessing board or other tax officials. Understandably such efforts have rarely succeeded in the federal

courts, since there is a natural reluctance to infer official misconduct from ambiguous circumstances alone. *See* Coulter v. Louisville & Nashville Railroad, 196 U.S. 599, 610, 25 S.Ct. 342, 49 L.Ed. 615 (1905).

▇ In the District Court and here on appeal Appellant has sought to prove intentional discrimination by demonstrating that in assessing its property the taxing authorities refused to consider well recognized factors affecting valuation. It is contended that a showing that tax officials held irrelevant to the present assessment factors which in other assessments they had considered significant indicates in and of itself an intention to discriminate against Appellant. Appellant relies primarily upon the Supreme Court's decision in Cumberland Coal Company v. Board of Revision, 284 U.S. 23, 52 S.Ct. 48, 76 L.Ed. 146 (1931), to support this position.

We do not believe that *Cumberland Coal* establishes any such per se rule as to proof of intentional discrimination.[3] In *Cumberland,* certain Pennsylvania County Commissioners valued all virgin coal lands in the county at identical rates per acre for tax purposes, ignoring such factors as distance from available transportation which the Commissioners *admitted* affected actual value. It was *"undisputed"* that despite the uniform assessments *"the actual or market value * * * varied* throughout the town-

ship." 284 U.S. 27–28, 52 S.Ct. 49, 50 (emphasis supplied). The finding of intentional discrimination was thus not based on the failure to consider the relevant factors alone. Rather it was predicated upon admissions made by the taxing authorities who acknowledged disregarding actual differences in value and who acted in the erroneous belief that discrimination was permissible so long as no property was assessed in excess of actual cash value.

Here, of course, the taxing authorities deny any intentional discrimination. There is no *direct* evidence that the authorities failed to consider factors which they *knew* would lower Appellant's assessment while taking these factors into account in assessing other properties.

There is, however, some evidence in the record suggesting that one or more members of the County and/or State Boards of Equalization[4] failed to consider the effect of zoning regulations, restrictive covenants, and limited frontage on the value of Appellant's property when called upon to equalize the assessment with those on other properties in the County and State. The members of these Boards who testified in the District Court indicated that it was their belief that the factors did not in any way diminish the value of Appellant's property, and were therefore irrelevant to any assessment. They did acknowledge, however, that such matters as

---

3. Nor do we believe that Appellant can find substantial support for such a rule in this Court's decision in City of Detroit v. Detroit & Canada Tunnel Co., 6 Cir., 92 F.2d 833 (1937). That case was one of several efforts made to apply substantive due process to the problem of overvaluation caused by the depression. (See also Great Northern R. Co. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532 (1936), and dissent of Mr. Justice Stone joined by Justices Brandeis and Cardozo, 297 U.S. 153, 56 S. Ct. 426 et seq.) In *Detroit* the opinion turned essentially on a finding that the assessment was "so grossly excessive as to be unreasonable." The failure of the taxing authorities to consider relevant factors was used by the Court primarily to explain how the excessive figure was reached. We

do not believe it was intended to have independent significance. To the extent that language in the opinion may intimate a belief that a taxing official's failure to consider relevant factors is— without more—proof of a denial of equal protection, we find the opinion in error and choose not to follow it.

4. There is evidence that the official who actually made the appraisals, Deputy Assessor Beatty took these factors into account in arriving at his valuation figure. Our disposition of this case does not require us to reach the question of whether or not his consideration of these factors renders the assessment proper even if the Boards intentionally chose not to consider them.

zoning regulations, restrictive covenants and road frontage could affect value and were frequently considered in equalization proceedings.

While we do not read *Cumberland Coal* to hold that failure to consider relevant factors establishes discriminatory intent *per se* neither does our view preclude reliance on such omission as some evidence of discrimination. Assuming, as we must, that public officials rarely admit wrong doing we must accept circumstantial evidence of improper intention. If, for instance, Appellant had been able to demonstrate that the omitted factors had time and again been held relevant in *comparable* situations by these same officials or that appraisal practice was so clearly settled that no reasonably intelligent man could believe correct the omission of a particular factor which had properly been called to his attention, then we might take the serious step of inferring intentional discrimination. *See* Coulter v. Louisville & N. RR. Co., *supra.* The District Court held and we agree that Appellant has not presented any proof which even approaches the required level.

Thus, though the Equalization Board members did acknowledge that zoning regulations, for instance, frequently affected value, they also testified that the zoning classification accorded Appellant's property was one which embodied only such restrictions on the building to parking space ratio as a successful shopping center developer would himself have to impose. Although Appellant's expert witness suggested that the zoning rules imposed a somewhat more restrictive ratio than would be necessary, nothing in his testimony suggests that the Board's decision on the effect of the zoning classification exceeded the bounds of possible judgmental error. Such error could not be the basis for an equal protection claim. *See,* Sunday Lake Iron Co. v. Wakefield, 247 U.S. at 353, 38 S.Ct. 495, 62 L.Ed. 1154; Sioux City Bridge v. Dakota County; Charleston Association v. Alderson, *supra.*

Appellant also attacks the failure of tax officials to take into account the negative effect on value of an agreement entered into by Appellant with Sears and Federated Stores. By the terms of this agreement Appellant bound itself to perform maintenance tasks for the entire Mall, to secure the permission of the other parties to the agreement before renting space to specified tenants and to require any purchaser of its interests in the Mall to assume its obligations under the agreement.

The tax officials testified that they believed such an agreement was essential to attracting two department stores of the quality of Sears and Federated. In their view this attracting effect offset any decrease in value caused by the restrictions. There was also testimony from some members of the Equalization Boards that the self-imposed nature of the restrictions made them irrelevant to any consideration of the overall value of the fee.

Again, Appellant's expert disputed this judgment and maintained that diminution in value did result from the restrictions. Appellant cites several cases from other jurisdictions to support the proposition that reductions in valuation are recognized to be proper in these circumstances by the courts and the appraisal profession. The only relevant case cited to support this proposition is the decision of a Florida Court of Appeals in Homer v. Dadeland Shopping Center, Inc., 217 So.2d 844 (1969). On appeal, however, the Florida Supreme Court reversed the lower court decision, specifically holding that reducing valuation because of self-imposed restrictions on the use of shopping center land would improperly lead "to an assessment of less than the entire interest of the real property." Homer v. Dadeland Shopping Center, Inc., Fla., 229 So.2d 834, 837 (1970). Thus there is little support for Appellant's position that the restrictive covenant should have led to a reduction in the assessment of its property, let alone for the further conclusion Appellant would have us reach, that the

Board's decision not to reduce valuation on this basis was so contrary to "well-recognized principles" as to give rise to an inference of intentional discrimination.

Similarly, there is little in the record to convince us that the taxing officials' decision not to consider the relatively limited main road frontage possessed by Southland Mall, Inc. itself was so wrong or contrary to principles acted upon by those officials in the past as to suggest intentional discrimination.

Apart from its efforts to show omission of relevant factors from assessment considerations, Appellant offered a second approach to the proof of intentional discrimination. It urged that the value per square foot assigned to its property so far exceeds that of properties it sees to be comparable as to suggest intentional discrimination. At trial, Appellant focused its comparison primarily on other shopping centers in Shelby County. It is apparent from the record below that any differences disclosed were easily explained by the tax officials in terms of Southland Mall's greater modernity and unique mall construction. Faced with failure in this direction the Appellant has now shifted its focus from an analysis of the valuation of other shopping centers to a comparison of the Mall appraisal with that of the department store buildings which flank it.

It was conceded by the Appellees, that the Mall's assessment on a square foot basis was some 35–50% higher than either Sears or Federated. Appellant's expert testified that construction costs per square foot would be roughly equal as among the two department stores and the Mall building. Cost is but one of several methods used by the assessors in valuing any piece of property in Shelby County, however; also used is an income projection method and a recent sales-market approach. It was uncontradicted that the tax officials used all three methods in evaluating each piece of property within the County, including the Southland Mall, Sears and Federated properties. Of the three methods, the income projection approach is consistently given most weight.

Appellant's property produces income in a very different manner from that in which the Sears and Federated properties do. While Sears and Federated operate retail stores and must pay their own insurance, taxes, maintenance, etc., the Mall secures its income from leases written on a net basis, freeing it from such expenses. Significant differences in income potential seem plausible under such circumstances. This fact, coupled with the uncontradicted evidence that the same methods were used to appraise Appellant's property, Sears, Federated and all other properties in the County, suggests that unexplained variations (if any) in value per square foot resulted from errors of judgment and not intentional discrimination.

As we have been at pains to point out throughout this discussion, such error does not represent a denial of equal protection.

The judgment of the District Court is affirmed.