IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

MALL OF MEMPHIS ASSOCIATES,

        Petitioner-Appellee,

                                    Shelby Chancery No. 106118-3
Vs.                                   C.A. No. 02A01-9609-CH-00214

TENNESSEE STATE BOARD OF
EQUALIZATION AND RITA C.
CLARK, Assessor of Property
for Shelby County,

        Respondents-Appellants.

<div style="text-align:center; border:2px solid black; display:inline-block; padding:10px;">

**FILED**

**August 1, 1997**

**Cecil Crowson, Jr.**
~~Appellate Court Clerk~~
</div>

_____

FROM THE SHELBY COUNTY CHANCERY COURT
THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR


Clare Orman Shields, Harry J. Skefos, Ron W. Mcafee,
Michael A. Brady; Martin, Tate, Morrow & Marston, P.C., of Memphis
For Appellee

Ronald Lee Gilman, Steven C. Bramer;
Farris, Mathews, Gilman, Branan & Hellen, P.L.C. of Memphis
For Appellant, Rita C. Clark

Charles W. Burson, Attorney General and Reporter
Christine Lapps, Assistant Attorney General
For Tennessee State Board of Equalization


*REVERSED AND REMANDED*

Opinion filed:


                                     **W. FRANK CRAWFORD,**
                                     **PRESIDING JUDGE, W.S.**


**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

      This appeal involves a constitutional challenge by the Mall of Memphis Associates (the

Mall) to an increase in its property value by the Assessor of Property for Shelby County,

Tennessee (the Assessor). The respondents, Tennessee State Board of Equalization (the Board) and Rita C. Clark,[1] the Assessor, appeal the judgment of the chancery court voiding an increase in the property assessment for the petitioner, the Mall. The chancery court held that the Board's reappraisal of the Mall's property violated the Mall's Fourteenth Amendment rights of equal protection under the United States Constitution.

In April 1989, Oak Court Mall and some adjacent property were purchased for $69.4 million.[2] Following the sale, the Shelby County Board of Equalization (SCBOE) reduced the appraised value of Oak Court Mall from $14.4 million to $8.5 million. In May 1989, upon learning of the reduction through an article in *The Commercial Appeal*, the Assessor appointed a task force to study the manner in which shopping malls had been valued during the 1980 county-wide reappraisal, the most recent reappraisal.[3] The Assessor concluded that an error existed in the base rental rates and gross rent multipliers used to appraise shopping malls in the 1980 county-wide reappraisal.

The Assessor admitted that there were more than 24,000 parcels of commercial and industrial property on the tax rolls of Shelby County in 1989 and estimated that there were approximately 200 shopping malls and shopping centers in Shelby County in 1989.[4] Other types of commercial and industrial property, including shopping centers, were appraised the same way as shopping malls in the 1980 county-wide reappraisal. However, the Assessor did not investigate the possibility of similar errors in the other types of properties. Initially, the Assessor intended to review and adjust the assessments of both shopping malls and shopping centers, however, the Assessor was unable to allocate staff time before what the Assessor perceived as the deadline.[5]

---

[1] In 1989, Michael Hooks was the Assessor in Shelby County. At the time the petition was filed, Harold Sterling was the Assessor. Pursuant to T.R.A.P. 19(c), Rita Clark was substituted as a defendant when she became the Assessor.

[2] The adjacent property included an office building and was worth approximately $9 million. Oak Court Mall was therefore sold for approximately $60 million.

[3] The 1980 county-wide reappraisal did not include some commercial land and rural acreage. These properties were reappraised in 1982.

[4] In this opinion, we will refer to enclosed malls as "shopping malls" and strip malls as "shopping centers."

[5] The Assessor has an April deadline to correct an error retroactively, but in 1989, the Assessor believed incorrectly that the deadline was August.

After the inputs for base rent were changed, the Assessor increased the appraised value for twelve shopping malls and fifteen anchor stores in Shelby County on August 31, 1989. The Assessor increased the Mall's appraised value from $15,249,100.00 to $41,217,000.00.

The Mall contested the actions of the Assessor before the SCBOE, but the SCBOE upheld the increased valuation. The Mall appealed to the Board pursuant to T.C.A. § 67-5-1412 (1994). On September 24, 1993, the Mall filed a motion for summary judgment asserting that the Assessor was not statutorily authorized to revalue the property in a nonreappraisal year and that the revaluation in this case was a "spot reappraisal" in violation of Article II, Section 28 of the Tennessee Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

The Board denied the Mall's motion for summary judgment because the Board believed that the Assessor had the statutory authority to adjust property values in nonreappraisal years, that the Assessor had not violated the requirements of equality and uniformity in Article II, Section 28 of the Tennessee Constitution, and that the Assessor had not violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

An evidentiary hearing was held by the Board before an administrative judge on October 21, 1994. The administrative judge found no basis for overturning the assessment change. The Mall appealed to the Board's Assessment Appeals Commission, which affirmed the decision of the administrative judge. On June 29, 1995, the Appeals Commission held that the reappraisal did not violate the Tennessee Constitution's mandate of "equality and uniformity" and that there was no proof of arbitrary action by the Assessor and no proof of an equal protection violation under the Fourteenth Amendment.

On July 31, 1995, the Mall filed a petition in the Chancery Court of Shelby County for review of the Appeals Commission's decision pursuant to T.C.A. § 67-5-1511 (1994). The petition requested a stay of the administrative proceedings and a finding that the Assessor subjected the Mall to an unlawful "spot reappraisal" of its property in violation of the Fourteenth Amendment. On August 30, 1995, the Assessor filed an answer to the petition denying that a stay was necessary and that the Mall was entitled to any relief.

The chancery court held hearings on January 12, 1996 and February 21, 1996. On March 18, 1996, the chancery court issued a decree finding that the Assessor initially intended to review

and adjust the assessments of both shopping malls and shopping centers in Shelby County, but that the Assessor actually reviewed and adjusted only the assessments on shopping malls and their anchor stores.[6] The chancery court held that the Assessor had the statutory authority under T.C.A. § 67-5-1603(a) (1994) to adjust an assessment in a nonreappraisal year and stated, "Such adjustments need not be made across an entire constitutional class, but must be applied in a non-discriminatory manner." The chancery court voided the Mall's increased assessment on the basis that the Assessor had unlawfully discriminated against the Mall in violation of the Mall's Fourteenth Amendment rights under the United States Constitution because the court could find no legitimate distinction between shopping malls and shopping centers.

The Assessor and the Board appeal the judgment of the chancery court and present two issues for our review: 1) whether the chancery court erred by applying the wrong legal standard in an equal protection claim, and 2) whether the chancery court erred in determining that there is no substantive difference between a shopping mall and a shopping center. The Mall, the appellee in this appeal, presents three issues: 1) whether the Assessor and the Board have overcome the presumption of correctness given to the findings by the chancery court; 2) whether the Assessor and the Board are estopped from arguing that the chancery court erred in using the wrong legal standard; and 3) whether the chancery court's ruling is sustainable on other grounds.

We will first examine the Mall's second issue as to whether the Assessor and the Board are estopped from arguing that the chancery court used the wrong legal standard. The Mall argues that the Assessor and the Board are estopped because they expressly agreed with the chancellor as to the controlling factual question.

In a colloquy with the parties' attorneys, the chancellor asked, "[If] the Court finds that there is a substantive similarity between these two [shopping malls and shopping centers], then what is your position with regard to the equality and uniformity?" Counsel for the Assessor responded, "If Your Honor finds that there is no rational basis for the assessors to distinguish between shopping malls on one hand and shopping centers on the other, then I think that you have to find that this was a spot reappraisal." Counsel for the Board also made similar remarks.

The chancery court proceeded to find that there was not a substantial difference between

---

[6] The decree was made final pursuant to Tenn. R. Civ. P. 54.02 by order entered July 1, 1997.

shopping malls and shopping centers and, therefore, that it was a spot reappraisal. The Mall claims that T.R.A.P. 36(a) estops the Board and the Assessor's argument about the wrong legal test. T.R.A.P. 36(a) provides in pertinent part, "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."

The Mall argues that the Board and the Assessor failed to take any action to correct the chancellor's framing of the issue. We disagree. First, the Board and the Assessor brought the proper legal standard to the chancellor's attention during both opening and closing remarks. Second, the chancellor asked the parties' counsels' position concerning "equality and uniformity." Equality and uniformity are requirements of Article II, Section 28 of the Tennessee Constitution, not the Equal Protection Clause of the Fourteenth Amendment. The Board and the Assessor claim that the chancellor used the wrong legal standard in an equal protection claim under the Fourteenth Amendment, not in an equality claim under the Tennessee Constitution. Therefore, we must examine the Board and the Assessor's first issue: whether the chancery court erred by using the wrong legal standard in an equal protection claim.

The Board and the Assessor argue that the chancellor erred in finding a constitutional violation based solely on his perception of no substantial difference between a shopping mall and a shopping center because the chancellor was required to find intentional discrimination before finding a constitutional violation. The rule is "well-established" that "mere errors of judgment do not support a claim of discrimination, but that there must be something more, --something which, in effect, amounts to an intentional violation of the essential principle of practical uniformity." *Sioux City Bridge Co. v. Dakota County, Nebraska*, 260 U.S. 441, 447, 43 S. Ct. 190, 67 L. Ed. 340 (1923).

In another colloquy with the Assessor's attorney, the chancellor addressed the Assessor's issues:

> MR. GILMAN: Okay, I'll stop there, Your Honor. Let's go to point two then that the assessor had only one motive. It wasn't improper. It was a good faith, nondiscriminatory intent to correct the error. . . .
> THE COURT: Let me save you some time. You don't need to argue that one either because, frankly, even though they talk about, through a blow-up of the *Commercial Appeal* article and the chewing out of an employee, that in and of itself doesn't show bad motive.

It just shows that people are upset and wondering what's going on. And in the absence of something more concrete, more smoking gunnish, so to speak, the Court is not going to allow the presumption of bad faith to occur when the presumption in the law is good faith absent someone carrying a substantial burden of proof to show bad faith. So I'm not concerned about that.

However, the chancellor concluded, "Yes, I do find that it is a discrimination that violates the equal protection of [the] Fourteenth Amendment of the United States Constitution." It is implicit in his statement that the chancellor found intentional discrimination with no rational basis for the disparate treatment. We will presume that the chancellor used the correct legal standard from his statement that "it is a discrimination."

We perceive that the real issue in this case is the Mall's first issue: whether the Assessor and the Board have overcome the presumption of correctness given to the findings by the chancery court.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the chancery court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

When determining the merits of equal protection challenges, Tennessee courts have followed the analytical framework developed by the United States Supreme Court and have utilized three standards of scrutiny, depending upon the right asserted. ***Tennessee Small Sch. Sys. v. McWherter***, 851 S.W.2d 139, 153 (Tenn. 1993). Equal protection analysis requires strict scrutiny of state action only when the state action interferes with the exercise of a "fundamental right" (e.g., right to vote, right of privacy), or operates to the peculiar disadvantage of a "suspect class" (e.g., alienage or race). ***State v. Tester***, 879 S.W.2d 823, 828 (Tenn. 1994). Because neither a fundamental right nor a suspect class is present in this case, the proper standard of scrutiny is the "rational basis" test.

In ***Doe v. Norris***, 751 S.W.2d 834 (Tenn. 1988), the Tennessee Supreme Court discussed the "rational basis" test:

> The concept of equal protection espoused by the federal and our state constitutions guarantees that "all persons similarly circumstanced shall be treated alike." Conversely, things which are different in fact or opinion are not required by either constitution to be treated the same. "The initial discretion to determine what is 'different' and what is 'the same' resides in the

> legislature of the States," and legislatures are given considerable latitude in determining what groups are different and what groups are the same. In most instances the judicial inquiry into the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest.

751 S.W.2d at 841 (citations omitted). Although the present case does not involve a legislative choice, the proper test is whether the Assessor's actions have a reasonable relationship to a legitimate state interest. The determinative issue is whether the facts show some reasonable basis for the disparate state action. *Tennessee Small Sch. Sys.*, 851 S.W.2d at 153.

The chancery court determined that the Assessor did not have a "legitimate basis" for making a distinction between shopping malls and shopping centers. However, implicit in this ruling was a showing of disparate state action, which is a necessary element of a claim of violation of equal protection rights. *Tennessee Dept. of Human Services v. Hinton*, 660 S.W.2d 506, 510 (Tenn. App. 1983). The element that the taxpayer must always prove is that he or she has been a victim of "intentional and arbitrary discrimination whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Southland Mall, Inc. v. Garner*, 455 F.2d 887, 889 (6th Cir. 1972) (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352, 38 S. Ct. 495, 62 L. Ed. 1154 (1918)).

The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination. *Sioux City Bridge Co.*, 260 U.S. at 445. Unless the taxpayer can show intentional and arbitrary discrimination, the state does not have to meet the "rational basis" test. The burden of establishing intentional discrimination rests upon the taxpayer challenging the official action. *Southland Mall*, 455 F.2d at 889.

In *Southland Mall*, the Sixth Circuit discussed discrimination in a taxpayer's equal protection claim:

> While taxpayers have normally prevailed only when they were able to demonstrate a systematic pattern of discrimination, such a systematic pattern does not appear to be an essential element of the claim. Thus clear proof that a tax was discriminatorily aimed at a single taxpayer has been held to support an equal protection claim.
> It is obvious, however that proof of intentional discrimination is likely to be difficult where the taxpayer cannot show a systematic pattern of discrimination or direct evidence of improper intention. The court is then asked to infer improper motive from isolated actions of an assessing board or other tax

7

officials. Understandably such efforts have rarely succeeded in the federal courts, since there is a natural reluctance to infer official misconduct from ambiguous circumstances alone.

*Southland Mall*, 455 F.2d at 889-90 (citations omitted).

In this case, the Assessor claimed that the decision to reappraise only the shopping malls was an allocation of staff and resources problem and that there was not an improper motive, and the chancellor found that the Assessor did not have an improper motive. We believe that this finding is correct. The Assessor was acting to correct an error, not to improperly discriminate against the Mall.

The Mall argues that the chancery court properly inferred that the Assessor intentionally discriminated against the Mall because of a memorandum written by Richard Ward, the Director of Valuation Standards and Computer Assisted Mass Appraisal at the Assessor's office. In a memorandum dated July 11, 1989, Ward noted to the Assessor, "It is deemed by R. Ward unwise to proceed with this effort until all malls, shopping centers, and strip shopping can be handled together (for 1990). The distinction between 'mall,' 'shopping center,' or any other intensive retail location is at best indistinct and at worst entirely arbitrary." However, the Assessor presented a letter dated May 31, 1989 from the Assessor to the SCBOE that stated, "As the new Assessor, I am desirous of correcting all errors to assure equity in taxation. This should not be seen as an attempt to penalize undervalued properties or to update appraisals to current market value, but rather as a correction to a sensible value for the base year of 1980."

We do not believe that the Assessor's actions, even in light of Ward's memorandum, show an improper motive or intentional discrimination. It may have been "unwise" for the Assessor to proceed, but the Assessor's actions were nothing more than a possible error in judgment. Relief cannot be predicated upon mere errors of judgment committed by tax officials. *Southland Mall*, 455 F.2d at 889.

We also believe that the Mall has not shown a "systematic pattern" of discrimination. The only tax-year at issue is 1990. The Mall was not taxed out of proportion with other members of its class in any year before or after 1990.[7] In 1991, the Assessor conducted a new county-wide reappraisal that equalized the taxes on every member of the commercial and

---

[7] The Assessor tried to change the value of the Mall's property for 1988 and 1989, but the increase was not allowed because the change was not timely.

industrial class.

Finally, the Mall has not proven that the increased assessment was a tax aimed at a single taxpayer. The Assessor increased the appraisals of eleven other malls in addition to the anchor stores. The Assessor believed that the "subclass" of shopping malls was a proper place to start the correction of a possible error and was not acting to single out the Mall.

The Mall claims that the increased assessment is a "spot reappraisal" because the Assessor reappraised twelve shopping malls and their fifteen anchor stores, but did not reappraise or investigate the entire commercial and industrial class. Basically, the Mall is arguing that the Assessor cannot constitutionally make any changes to a member of a class without changing or investigating every member of the class in the same year. We do not believe that the constitutional requirements of the Fourteenth Amendment were intended to force the Assessor, acting with limited resources and staff, to so tighten his or her operations.

The Mall relies on *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, West Virginia*, 488 U.S. 336, 109 S. Ct. 633, 102 L. Ed. 2d 688 (1989). In *Allegheny Pittsburgh*, the Supreme Court stated,

> The Webster County tax assessor valued petitioners' real property on the basis of its recent purchase price, but made only minor modifications in the assessments of land which had not been recently sold. This practice resulted in gross disparities in the assessed value of generally comparable property, and we hold that it denied petitioners the equal protection of the laws guaranteed to them by the Fourteenth Amendment.

488 U.S. at 338, 109 S. Ct. at 635. The Mall argues that the Assessor's action in this case was a conscious and arbitrary decision that resulted in the Mall being assessed at a much higher value than similarly situated property in the same class. The Mall believes that this case demands the same result the United States Supreme Court reached in *Allegheny Pittsburgh*. We disagree because the facts of *Allegheny Pittsburgh* are substantially different from the facts in this case.

In *Allegheny Pittsburgh*, the Supreme Court stated the important facts that "[p]etitioners' property has been assessed at roughly 8 to 35 times more than comparable neighboring property, and these discrepancies have continued for more than 10 years with little change." *Id.* at 344, 109 S. Ct. at 638. The Court went on to conclude, "The relative undervaluation of comparable property in Webster County *over time* therefore denies petitioners the equal protection of the law." *Id*. at 346, 109 S. Ct. at 639 (emphasis added).

In this case, the inequality suffered by the Mall occurred only during the 1990 tax year. The Assessor was in the process of correcting an error and delayed the investigation of the possibility of errors in other properties by only one year. In *Allegheny Pittsburgh*, the Supreme Court made a distinguishing statement about the facts in that case: "But the present action is not an example of transitional delay in adjustment of assessed value resulting in inequalities in assessments of comparable property." *Id*. at 344, 109 S. Ct. at 638. We believe that the facts in the case before us present such an example of a "transitional delay."

In *Allegheny Pittsburgh*, the Supreme Court stated,

> The use of a general adjustment as a transitional substitute for an individual reappraisal violates no constitutional command. As long as general adjustments are accurate enough over a short period of time to equalize the differences in proportion between the assessments of a class of property holders, the Equal Protection Clause is satisfied. Just as that Clause tolerates occasional errors of state law or mistakes in judgment when valuing property for tax purposes, it does not require immediate general adjustment on the basis of the latest market developments. In each case, the constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners.

*Id.* at 343, 109 S. Ct. at 638 (citations omitted).

The Equal Protection Clause protects the individual from state action that selects him or her out for discriminatory treatment by subjecting him or her to taxes not imposed on others of the same class. *Hillsborough Township v. Cromwell*, 326 U.S. 620, 623, 66 S. Ct. 445, 448, 90 L. Ed. 358 (1946). The right is the right to equal treatment. *Id.* The taxpayer cannot complain if equality is achieved by increasing the same taxes of other members of the class to the level of his or her own. *Id.*

In this case, the Assessor achieved equality within one year of the Mall's increased assessment by increasing the same taxes of other members of the commercial and industrial class in the 1991 county-wide reappraisal. In 1989, the Assessor was acting to correct a past inequity. The Assessor was not trying to reappraise the Mall's property to the 1990 fair market value. We cannot find that the Mall was unfairly discriminated against or singled out in violation of the Equal Protection Clause of the Fourteenth Amendment. The evidence preponderates against the chancery court's findings that the Assessor discriminated against the Mall.

Because we find that there was no intentional discrimination, the state is not required to

10

meet the rational basis test. Thus, the difference between a shopping mall and a shopping center is irrelevant. The Board and the Assessor's second issue is pretermitted.

The Mall's third issue for review is whether the chancery court's ruling is sustainable on other grounds. The Mall argues that the 1989 increased assessment violated Article II, Section 28 of the Tennessee Constitution, which mandates equality and uniformity in taxation throughout the state:

> The ratio of assessment to value of property in each class or subclass shall be equal and uniform throughout the State, the value and definition of property in each class or subclass to be ascertained in such manner as the Legislature shall direct. Each respective taxing authority shall apply the same tax rate to all property within its jurisdiction.

Tenn. Const. art. II, § 28. The Tennessee Constitution creates three classes of property and further classifies real property. *See id*. The Constitution states, "Real Property shall be classified into four (4) subclassifications and assessed as follows . . . (b) Industrial and Commercial Property, to be assessed at forty (40%) percent of its value." *Id*.

All property in the industrial and commercial subclass must be treated the same, and the Mall argues that the Assessor's actions, both in timing and effect, violate the requirement of equality and uniformity. The equality and uniformity requirement of Article II, Section 28 applies across the classes and subclasses created by the Constitution. *Marion County v. State Bd. of Equalization*, 710 S.W.2d 521, 523 (Tenn. App. 1986).

The primary constitutional mandates governing property taxation in Tennessee are that all property shall be taxed, according to its value, and that taxes shall be equal and uniform. *Metropolitan Gov't of Nashville v. Hillsboro Land Co.*, 436 S.W.2d 850, 855 (Tenn. 1968). The Court continued,

> Undoubtedly these fundamental principles of taxation are intended to apply to the time at which such taxes are assessed, so that the property taxed shall be so taxed at this value at the time at which the tax is imposed; and also the equality and uniformity of taxation required, are equality and uniformity with taxes on property of like character imposed at or about the same time.

*Id.* (quoting *State v. Butler*, 79 Tenn. 410, 413 (1883)).

We agree with the Mall that the timing of reappraisals must be equal and uniform. However, it is clear from the record that the Assessor did not *reappraise* the Mall's property to 1989 or 1990 fair market values. Instead, the Assessor corrected a past error using the fair

market value from the 1980 county-wide reappraisal.[8]

The Mall cites a decision by an administrative judge from a hearing before the Board in support of its position, *In re Barnes*, Davidson County (Tenn. Bd. of Equalization Oct. 16, 1987). The administrative judge found that the assessor in that case reappraised the land in question to reflect the increase in land values since the last county-wide reappraisal, and the judge voided the increase. *Id*. at 1-2. The administrative judge stated, "It should be stressed that this case involves reappraisal of a small area of the county . . . in order to reflect the increase in land values since 1984. This does not mean that the assessor cannot correct errors pursuant to T.C.A. § 67-5-509 or increase appraisals in accordance with the periodic reappraisal requirements of T.C.A. § 67-5-1601." *Id.* at 2.

We believe that the Assessor's actions do not violate the equality and uniformity mandate of the Tennessee Constitution. We may have reached a different result if the Assessor reappraised the Mall's value using the 1990 fair market value. However, the Assessor merely adjusted the Mall's previous assessment by correcting an error and equalized the Mall back to the 1980 county-wide reappraisal. The Mall's assessment was calculated using the same time and base year as the rest of the commercial and industrial property.

The Mall also argues that the Assessor lacked the statutory authority to reappraise the Mall's property in a nonreappraisal year. The Mall claims that the Assessor's powers are severely limited in nonreappraisal years. The Mall points out that the error correction statute, T.C.A. § 67-5-509 (1994), does not allow the Assessor to change an assessment except those with errors that do not involve the discretion or judgment of the Assessor. T.C.A. § 67-5-509(f) (1994) provides,

> Errors or omissions correctable under this section include only obvious clerical mistakes, involving no judgment of or discretion by the assessor, apparent from the face of the official tax and assessment records, such as the name or address of an owner, the location or physical description of property, misplacement of a decimal point or mathematical miscalculation, errors of classification, and duplicate assessment. Errors or omissions correctable hereunder do not include clerical mistakes in tax reports or schedules filed by a taxpayer with the assessor.

We agree with the Mall that the Assessor did not have the authority to change the

---

[8] Because the Mall was constructed in 1983, the Mall's assessed value in 1983 was equalized back to the 1980 county-wide reappraisal.

assessment pursuant to T.C.A. § 67-5-509. The error in the formula in this case was more than a clerical error or a mathematical miscalculation.

The Assessor claims that she is authorized to change assessments pursuant to T.C.A. § 67-5-1603(a)(2), which provides: "The local assessor of property and county boards of equalization may adjust individual assessments in accordance with other facts and information relevant to the proper assessment of the property." T.C.A. § 67-5-1603(a)(2) (1994). We believe that this section allows the Assessor to make changes to individual assessments in nonreappraisal years.

T.C.A. § 67-5-1603(a)(3) (1994) provides, "No such changed assessments for individual taxpayers shall result in inequality or destroy the uniformity of assessment intended to be achieved by the reappraisal program."

We believe that the Assessor's adjustment to the Mall's assessment does not result in an inequity or destroy uniformity because the Assessor equalized the Mall's assessment using the 1980 county-wide reappraisal.

Accordingly, the order of the chancery court is reversed. This case is remanded to the Board for whatever proceedings may be necessary. Costs of this appeal are assessed against the appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**DAVID R. FARMER, JUDGE**


_____
**HOLLY KIRBY LILLARD, JUDGE**